[No. A089749. First Dist., Div. Five. Jan. 30, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
HEALTH LABORATORIES OF NORTH AMERICA, INC., et al.,
Defendants and Appellants.

## COUNSEL

Gary Lieberstein, District Attorney (Napa), Daryl Arthur Roberts, Deputy District Attorney; J. Michael Mullins, District Attorney (Sonoma), and David B. Copenhaver, Deputy District Attorney, for Plaintiff and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, and Ronald A. Reiter, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Respondent.

Bowles & Verna, Michael P. Verna, David W. Trotter, Donald A. Velez; The Lustigman Firm and Sheldon S. Lustigman for Defendants and Appellants.

## OPINION

**JONES, P. J.**—Health Laboratories of North America, Inc., and its officer, Marc J. Kaplan, appeal an order denying their motion pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] to strike the People's action for a permanent injunction enjoining them from making unsubstantiated advertising claims and for civil penalties for having made false or misleading advertisements. Appellants contend the statute's provision exempting

---

[1]Unless otherwise stated, all further section references are to the Code of Civil Procedure. SLAPP is an acronym for strategic lawsuits against public participation. (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 542, fn. 1 [46 Cal.Rptr.2d 880].)

public prosecutors from its strictures violates the equal protection clauses of the United States and California Constitutions. (U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 7.)

BACKGROUND

Appellants manufacture a weight loss product called Berry Trim Plus. The District Attorneys of Napa and Sonoma Counties on behalf of the People, brought an action against appellants, alleging that their advertising claims for the product violated various statutes governing false or misleading advertising and unfair competition. (Bus. & Prof. Code §§ 17200, 17500, 17508.) As amended, the complaint sought an injunction against appellants' advertising claims, civil penalties for each of their acts of unfair competition and each false or misleading statement, and an order for restitution to all victims of appellants' acts of unfair competition. (Bus. & Prof. Code, §§ 17203, 17206, 17536.)

Asserting that the People brought the action to chill their valid exercise of free speech through an abuse of the judicial process, appellants filed a special motion to strike the amended complaint under section 425.16, the anti-SLAPP statute. Appellants acknowledged that the statute states that it "shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor" (§ 425.16, subd. (d); hereafter subdivision (d)), but contended that subdivision (d) is unconstitutional. They argued that subdivision (d) arbitrarily discriminated against them and violated their right to equal protection of the law because private plaintiffs who sue a defendant for conduct which is in furtherance of the defendant's free speech rights are subject to the anti-SLAPP statute but public prosecutors are not.

The trial court denied appellants' special motion, concluding that under either rational basis or strict scrutiny analysis, subdivision (d) is constitutional.

DISCUSSION

I. *Standard of Review*

The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

## II. *The Anti-SLAPP Statute*

Section 425.16 was enacted in response to a legislative concern that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).) Section 425.16 addresses this concern by providing that a cause of action against a person arising from any act of that person in furtherance of his constitutional right of petition or free speech in connection with a public issue shall be subject to a special motion to strike, unless the person asserting the cause of action establishes by pleading and affidavit a probability that he will prevail. (§ 425.16, subd. (b)(1).)

For purposes of the anti-SLAPP statute, acts in furtherance of a defendant's constitutional rights of petition and free speech in connection with a public issue include "any written or oral statement or writing made in a place open to the public . . . in connection with an issue of public interest" and any "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(3) & (4).) The People do not dispute that advertisements for a product to treat a medical condition that affects a large number of people may be the kind of act that can satisfy the statutory definition of an act in furtherance of the manufacturer's right of free speech. (See *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567 [92 Cal.Rptr.2d 755].)

 The history of the anti-SLAPP statute reflects the Legislature's concern that, while there was a critical need to prevent suits brought only to chill the exercise of the defendant's First Amendment rights, any such protection should not be at the expense of a public prosecutor's ability to enforce consumer protection laws.

In the 1990 legislative session, an anti-SLAPP bill was introduced to the Senate (Sen. Bill No. 2313 (1989-1990 Reg. Sess.)). It closely resembled the present anti-SLAPP statute, by establishing a procedure for early dismissal of an action brought against a person arising from any act of that person in furtherance of his or her free speech rights. However, it did not contain any exemption for public prosecutors. The bill analysis by its sponsoring Senate Judiciary Committee noted that the state Attorney General, although not

opposed to the bill, was concerned that it could have "the unintended consequence of hindering enforcement of certain consumer protections laws by state and local agencies, e.g., enforcement of new commercial fundraiser for charitable purpose law; enforcement of law prohibiting false, misleading or deceptive advertising." The bill, as passed by the Legislature, was not amended to address this concern. In September 1990, the Governor vetoed the bill.

In the 1991 legislative session, another anti-SLAPP bill (Sen. Bill No. 10, 1991-1992 Reg. Sess.) was introduced, again without addressing the Attorney General's concerns. Following introduction of Senate Bill No. 10, the California District Attorneys Association wrote its sponsoring senator to object to it because it "will seriously inhibit or prevent prosecutions for consumer or environmental violations." The association gave as a specific example the bill's restraint on the ability of the district attorney to bring a consumer action for false advertising. Thereafter, Senate Bill No. 10 was amended to add a provision that it "shall not apply to any action brought in the name of the people of the State of California by the Attorney General, any district attorney, or any city attorney acting as a public prosecutor." Senate Bill No. 10 was subsequently incorporated into Senate Bill No. 341, which was passed by the Legislature but vetoed by the Governor.

In the 1992 legislative session a third anti-SLAPP bill was introduced. (Sen. Bill No. 1264 (1991-1992 Reg. Sess.).) This bill contains the present subdivision (d) language, which differs from Senate Bill No. 341 of 1991 only by adding the modifier "enforcement" before action, i.e., the statute shall not apply to any "enforcement" action brought by the Attorney General or other public prosecutor. This bill was approved by the Governor (Stats. 1992, ch. 726, § 2, pp. 3523-3524) and, together with subsequent amendments, is the present section 425.16.

## III. *The Equal Protection Clause*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. [Citation.]" (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439 [105 S.Ct. 3249, 3254, 87 L.Ed.2d 313] (*Cleburne*).) Although most statutes differentiate somehow between classes of people, the equal protection clause does not forbid classifications. (*Nordlinger v. Hahn* (1992) 505 U.S. 1, 10 [112 S.Ct. 2326, 2331-2332, 120 L.Ed.2d 1].) So long as the classification is not arbitrary but

is based on some difference in the classes having a substantial relation to a legitimate object to be accomplished, Legislatures may make reasonable classifications of persons, businesses and activities. (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 599, p. 61, & citations therein.)

The equal protection clause of the California Constitution similarly states that a person "may not be denied equal protection of laws" (Cal. Const., art. I, § 7), and statutory classifications challenged thereunder are analyzed by the same rules applicable to challenges to the Fourteenth Amendment. (*Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198]; *Graham v. Kirkwood Meadows Pub. Util. Dist.* (1994) 21 Cal.App.4th 1631, 1642 [26 Cal.Rptr.2d 793].)

Legislative classifications are presumed valid and will be sustained if the classification is rationally related to a legitimate state interest. Most statutes challenged on equal protection grounds are tested by this rational basis standard. (*Cleburne, supra,* 473 U.S. at p. 440 [105 S.Ct. at pp. 3254-3255].) Only when the classification jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic is the statute subject to the heightened review employed in strict scrutiny test. (*Nordlinger v. Hahn, supra,* 505 U.S. at p. 10 [112 S.Ct. at pp. 2331-2332].) To pass constitutional muster in that case, such statutes must be suitably tailored to serve a compelling state interest. (*Cleburne, supra,* 473 U.S. at p. 440 [105 S.Ct. at pp. 3254-3255].) For purposes of the strict scrutiny test, a fundamental right means a fundamental constitutional right. (*Graham v. Kirkwood Meadows Pub. Util. Dist., supra,* 21 Cal.App.4th at p. 1642.)

IV. *Section 425.16—Rational Basis or Strict Scrutiny Test?*

By exempting public prosecutors from its special motion to strike procedure, section 425.16 impliedly classifies defendants in a SLAPP action into two groups: those who may avail themselves of the motion to strike remedy because they are parties to an action brought by a plaintiff other than a public prosecutor, and those to whom the anti-SLAPP remedy is unavailable because they are parties to an action brought by a public prosecutor. Appellants argue that this classification between SLAPP defendants jeopardizes their constitutional right to free speech because it precludes them from "vindicating their free speech rights by filing a special motion to strike," and therefore section 425.16 must be tested by strict scrutiny.

Section 425.16 is tangentially related to the constitutional right of free speech, insofar as it was enacted to prevent unscrupulous plaintiffs from

filing meritless lawsuits in order to stymie a person's exercise of free speech or petition for redress of grievances. However, it does not in essence impinge upon or implicate the fundamental right of free speech. Its classification does not withhold the right to exercise free speech to anyone. Nor is the basis of its classification the actual exercise of free speech, e.g., it does not differentiate between those who may or may not exercise the right, or draw distinctions based on the content of the speech. (Cf. *Dunn v. Blumstein* (1972) 405 U.S. 330, 334-338 [92 S.Ct. 995, 999-1001, 31 L.Ed.2d 274] [statute that classifies voters by duration of residence implicates fundamental rights of voting and interstate travel, so is tested by strict scrutiny standard].) It does not, in short, curtail speech protected by the First Amendment. Rather, section 425.16 is merely "a procedural screening mechanism for determining whether a plaintiff can demonstrate sufficient facts to establish a prima facie case to permit the matter to go to a trier of fact. [Citation.]" (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 356 [42 Cal.Rptr.2d 464].)

Statutes that classify and impose differing procedural requirements on litigants are generally valid if the classification is supported by a rational basis. (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 865 [44 Cal.Rptr.2d 46] and cases cited therein (*Lafayette*).) In *Lafayette*, a SLAPP plaintiff challenged section 425.16 as violative of its right to equal protection on the ground the statute infringed on its ability to gain access to the judicial system. (*Lafayette, supra*, 37 Cal.App.4th at p. 865.) In other words, according to the plaintiff, the statute chilled its own constitutional right to petition for redress of grievances. However, we concluded, section 425.16 does not bar a plaintiff's complaints that arise from another person's exercise of his or her free speech or petition rights, "but only provides a mechanism through which such [plaintiff's] complaints can be evaluated at an early stage of the litigation process." (*Lafayette, supra*, at p. 865.)

The corollary to our conclusion in *Lafayette* is that section 425.16, and particularly subdivision (d) thereof, does not prevent SLAPP defendants from exercising free speech. Neither does it deprive a defendant who believes a public prosecutor's action violates his right of free speech from access to the judicial system to challenge the prosecutor's action. Therefore, the fact that the procedure set forth in section 425.16 is unavailable to defendants who characterize a public prosecutor's complaint against them, as a SLAPP action does not create a legislative classification subject to strict scrutiny. We therefore determine whether the statute passes the rational basis test.

V. *Section 425.16—Rationally Related to Legitimate State Interest*

SLAPP suits are typically characterized as suits brought not to vindicate a legal right but to interfere with the defendant's ability to pursue his or her interest. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 645 [49 Cal.Rptr.2d 620].) SLAPP plaintiffs do not care so much about winning their lawsuits as they care about delaying and distracting the defendant from his or her objective, which is generally economically adverse to those of the SLAPP plaintiff. SLAPP plaintiffs achieve their goal if their suits deplete the defendant's resources and energy. (*Ibid.; Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 741 [36 Cal.Rptr.2d 687].) The legislative history of section 425.16 plainly implies that its purpose was to prevent the harm caused by such plaintiffs.

By contrast, a public prosecutor's enforcement action is not motivated by a retaliatory attempt to gain a personal advantage over a defendant who has challenged his or her economic ambition. The prosecutor's motive derives from the constitutional mandate to assure that the laws of the state are uniformly enforced and to prosecute any violation of these laws, so that order is preserved and the public interest protected. (Cal. Const., art. V, § 13; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15 [112 Cal.Rptr. 786, 520 P.2d 10].) Nothing in the legislative history of section 425.16 implies that the problem the Legislature sought to rectify thereby was created by prosecutors bringing meritless enforcement actions. The state may properly limit a regulation to the class of persons as to whom it thinks the need for regulation is more crucial or imperative. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 644 [88 Cal.Rptr.2d 283, 982 P.2d 154].)

To enable prosecutors to perform their constitutional duties thoroughly and effectively, laws have been enacted to insulate them from actions that would hinder or deter their enforcement actions. They are not subject to defamation actions for statements made in the proper discharge of official duties or in the initiation or course of any proceeding authorized by law. (Civ. Code, § 47, subds. (a), (b)(4).) They cannot be enjoined to prevent the execution of a public statute for the public benefit. (Civ. Code, § 3423, subd. (d).) They are not liable for injuries caused from their discretionary acts or from instituting or prosecuting any judicial or administrative proceeding. (Gov. Code, §§ 820.2, 821.6.)

The exclusion of public prosecutors from the anti-SLAPP motion procedure is consistent with the rationale of these immunity statutes. Subjecting them to such a procedure could unduly hinder and undermine their efforts to

protect the health and safety of the citizenry at large by delaying an enforcement action. Not only would prosecutors have to respond to the motion at the trial level, they could become ensnared in an appeal, insofar as the grant or denial of a SLAPP motion is immediately appealable. (§ 425.16, subd. (j).) False advertising enforcement actions could be particularly susceptible to delay ·by the moving manufacturer's easy assertion that the prosecutor's action interfered with its commercial free speech rights.

We conclude that the classification created by subdivision (d)'s exemption of public prosecutors' enforcement actions from anti-SLAPP motions bears directly on furthering the state's legitimate interest of allowing prosecutors—who did not create the SLAPP problem—to pursue actions to enforce laws, unencumbered by delay, intimidation, or distraction. It therefore does not violate the equal protection clause of either the United States or California Constitution.

DISPOSITION

The order is affirmed.

Stevens, J., and Richman, J.,* concurred.

On February 28, 2001, the opinion was modified to read as printed above.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.