[No. A097704. First Dist., Div. Two. Nov. 7, 2002.]

RICHARD S. HAAS, Plaintiff and Appellant, v.
ROY MEISNER, as Acting Chief of Police, etc., et al., Defendants and
Respondents.

## Counsel

Lasky, Haas & Cohler, Charles B. Cohler and George G. Gigounas for Plaintiff and Appellant.

Wiley Price & Radulovich, and Joseph E. Wiley for Defendants and Respondents.

## Opinion

**LAMBDEN, J.**—Richard S. Haas (Haas) appeals from the trial court's denial of his petition for writ of mandate. Haas petitioned for an order requiring the City of Berkeley (Berkeley) and Acting Chief of Police Roy Meisner (Meisner) (collectively respondents) to renew an endorsement permitting Haas to carry a concealed weapon. He contends that under Penal Code section 12027, subdivision (a)(1)(A),[1] he is entitled to the endorsement. We conclude that he does not satisfy the requirement of being an "honorably retired" peace officer under section 12027, subdivision (a)(1)(A), because he never qualified for and accepted a service or disability retirement. We therefore affirm.

### Background

Haas served as a reserve officer for the Berkeley Police Department (police department) from 1969 until 1996. During this period, Haas obtained the training set forth in section 832.6 and carried a firearm. According to respondents, reserve officers are civilian individuals who assist the police department on a part-time basis. While regular police officers work 40 hours per week in addition to overtime, reserve officers work much less. During 1995, Haas's reserve hours totaled 138.95, or an average of 11 hours per month. In 1996, he averaged nine hours per month.

Until the mid-1990's, reserve officers served on a volunteer basis and only received pay for time spent helping the police department at special events such as football games or street races. In 1995, under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), Berkeley began paying the reserve officers minimum wage for all of the hours worked.

---

[1] All further unspecified code sections refer to the Penal Code.

In addition, the Omnibus Budget Reconciliation Act of 1990 (OBRA) (Pub.L. No. 101-508 (Nov. 5, 1990) 104 Stat. 1388-469[2]) required that, as of January 1, 1992, cities enroll all employees, including employees such as Haas, in Social Security or an equivalent plan if they were not members of the cities' retirement plans. OBRA demanded that public employers either: (a) enroll employees in Social Security and deduct appropriate Social Security taxes from the employees' paychecks; or (b) enroll them in a substitute Social Security program. In response, Berkeley offered the Public Agency Retirement System (PARS), a Social Security alternate plan, to its hourly employees such as police department reserve officers.

Berkeley enrolled Haas in its PARS plan in October 1993. Both the employer and Haas each contributed 3.75 percent every pay period to the PARS account. Haas immediately vested in PARS since it has no service requirement. Pursuant to the police department's General Order R-33 (Order R-33), Haas retired on August 31, 1996. According to the Berkeley City Attorney, Order R-33 provides that reserve officers are eligible for retirement: "(a) upon reaching age 50 and having 10 years of continuous service, (b) upon having 20 years of continuous service, (c) in the event of a job-related medical disability, or (d) in the event of a non-job-related medical disability, but with 10 years of continuous service." Haas alleges that when he retired, section 500.80 of the police department's reserve manual provided that "[r]etired officers shall normally be given a retirement badge and identification card at the time of retirement." At retirement, Haas's PARS balance was $331.50 plus any interest earned. PARS transferred his account balance to his individual retirement account (IRA).

Relying upon a November 1995 Berkeley City Attorney legal opinion, the police department issued Haas an identification card containing an endorsement permitting him to carry a concealed weapon (CCW endorsement). The opinion concluded: "The Chief has the discretion to deny or revoke a CCW endorsement for an honorably retired [police department] reserve officer who has obtained the training set forth in Penal Code § 832.6 and carried a firearm as a reserve, only if the Chief believes that there is good cause to deny the endorsement. Otherwise, the endorsement must be given to the retired officer. Retired reserves who have not met the training requirements of Section 832.6 or who did not carry a firearm as a reserve are not entitled to the CCW endorsement."

In September 1997, the Berkeley City Attorney issued another legal opinion. This opinion stated that it was responding to the request of former Chief of Police D. E. Butler (Butler) that it reexamine its 1995 legal opinion.

---

[2]Currently 42 United States Code section 410(a)(7).

The 1997 opinion stated that it "overrules and supersedes the entire legal opinion dated November 8, 1995." Its new conclusion was as follows: "Under Penal Code section 12027(a), honorably retired [police department] reserve officers are not entitled to a CCW endorsement on their ID cards. Therefore, the Chief should not allow CCW endorsements on the ID card of any retired [police department] reserve officers. [¶] However, as with any other resident of Alameda County, under Penal Code section 12050, the Chief has the discretion to issue a retired reserve officer who resides within Alameda County a license to carry a concealed weapon, if the reserve officer meets the requirements for obtaining the license, such as showing good cause for needing one."

In 2001, Haas requested from the police department a renewal of his CCW endorsement, which was expiring in September 2001. Based on the 1997 city attorney opinion, Butler notified Haas that the police department did not have the authority to issue him a CCW endorsement.

Haas filed a petition for writ of mandate requesting the court to order respondents to renew his CCW endorsement, which the trial court denied. The trial court also declined his request for a statement of decision, stating no disputed facts existed and the matter "turns solely on a question of law." Haas filed a timely notice of appeal.

## DISCUSSION

 Haas contends that Butler was required under section 12027, subdivision (a)(1)(A), to renew his CCW endorsement. Respondents assert that Haas does not meet the requirements of being "honorably retired" under this provision, and he must therefore apply for permission to carry a concealed weapon under a different statute, section 12050.

Sections 12025 and 12031, subdivision (a), prohibit individuals from carrying concealed weapons. Section 12027, which exempts certain active and retired peace officers from this statutory prohibition, provides the following: "Section 12025 does not apply to, or affect, any of the following: [¶] (a)(1)(A) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5, other honorably retired peace officers who during the course and scope of their employment as peace officers were authorized to, and did, carry firearms, full-time paid peace officers of other states and the federal government who are carrying out official duties while in California, or any person summoned by any of these officers to assist in making

arrests or preserving the peace while he or she is actually engaged in assisting that officer. Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. . . . As used in this section and Section 12031, the term 'honorably retired' includes all peace officers who have qualified for, and have accepted, a service or disability retirement. For purposes of this section and Section 12031, the term 'honorably retired' does not include an officer who has agreed to a service retirement in lieu of termination."

In determining whether a retired Berkeley reserve police officer meets the requirements of section 12027, we first consider the qualification of acting as a peace officer authorized to carry firearms during the course and scope of employment. Section 830.6, subdivision (a), which governs reserve police officers, provides: "(1) Whenever any qualified person is deputized or appointed by the proper authority as a reserve or auxiliary sheriff or city police officer . . . and is assigned specific police functions by that authority, the person is a peace officer, if the person qualifies as set forth in Section 832.6. The authority of a person designated as a peace officer pursuant to this paragraph extends only for the duration of the person's specific assignment. . . . [¶] (2) . . . The authority of a person designated as a peace officer pursuant to this paragraph includes the full powers and duties of a peace officer as provided by Section 830.1. . . ." There is no dispute that Haas obtained the training set forth in section 832.6 and was authorized to and did carry firearms while an active reserve officer. Accordingly, he fulfilled the qualification of being a peace officer who carried a firearm.

The remaining question concerns his satisfaction of the requirement that he was "honorably retired" by qualifying for *and* accepting "a service or disability retirement." (§ 12027, subd. (a)(1)(A).) There is also no dispute that Haas retired pursuant to Order R-33 and that he satisfied the "honorable" requirement. The parties, however, diverge in their interpretation of qualifying for and accepting a service retirement.[3] Haas maintains that he retired pursuant to Order R-33 and he accepted the PARS program. Consequently, he argues that he satisfied the service retirement mandate of the statute. Respondents argue that PARS is not a retirement program based on years of service and age at retirement and therefore Haas neither "qualified for" nor "accepted" a service retirement as required under section 12027, subdivision (a)(1)(A).

We are not aware of any appellate court that has addressed this precise question. ■ Since this issue is one of statutory construction, we review

---

[3]Haas does not assert, and no evidence in the record supports, that he qualified for and accepted a disability retirement.

the lower court's ruling de novo. ■ "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) " 'Rules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences.' " (*Ford v. Gouin* (1992) 3 Cal.4th 339, 348 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769].) Exceptions to the general provisions of a statute are to be narrowly construed; only those circumstances that are within the words and reason of the exception may be included. (*City of Lafayette v. East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1017 [20 Cal.Rptr.2d 658].)

■ The Legislature amended section 12027 in 1993 to define the term "honorably retired" as "all peace officers who have qualified for, and have accepted, a service or disability retirement." (Stats. 1993, ch. 224, § 1, p. 1768.) Regular police officers are enrolled in the California Public Employees' Retirement System (CALPERS), a retirement program that provides for service and disability retirement. Under CALPERS, the amount of the service retirement pension depends upon the person's age at retirement, years of service, and final compensation. In addition, it provides disability retirement.

In contrast, the only retirement program offered to Berkeley reserve officers is PARS. PARS does not provide any disability retirement. Berkeley Resolution No. 57, 141-N.S. authorizes "a contract with the Public Agency Retirement System (PARS) to allow participation in a qualified retirement plan as an alternative to social security for hourly and daily paid employees effective October 1, 1993." It specifies that its purpose is to meet the requirements of section 11332 of the Social Security Act, and is in place of Social Security coverage. Berkeley employees not enrolled in a retirement system were enrolled in PARS; both the employer and the participant each contributed 3.75 percent of the participant's salary every pay period to the PARS account. A person became a participant in the plan immediately upon being hired. A brief description prepared by PARS for participants specified: "Investment activity minus plan administrative expenses will be credited to your PARS . . . account based upon your monthly account activity and will

accumulate tax-free until your termination from the plan and the distribution of your funds." Once a person stops working as a reserve officer, for whatever reason, a PARS participant is entitled to the balance in the account. Thus, a reserve officer does not have to retire to be entitled to the sum in the PARS account. The participant may roll over the vested amount into another retirement account, such as an IRA.

Haas asserts that Berkeley chose to provide a retirement plan that vests immediately, and nothing prevents an employer from providing an immediately vesting plan. He argues that the only reason he received the retirement program is because he performed service to Berkeley. He maintains that the statute does not state that an officer's retirement plan must contain certain vesting or pension provisions. Further, he points out that he met the requirements for retirement under Order R-33 because he had more than 20 years of continuous service.

We, however, cannot accept Haas's interpretation of the statute. Under his interpretation, "service retirement" means that a person retires after accepting any type of retirement plan, including some type of plan mandated by OBRA. But the statute did not specify that "honorably retired" means simply qualifying for and accepting retirement; rather, it specifies that the person must qualify for and accept "service or disability" retirement. When interpreting a statute, we must, if possible, consider every word "in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at pp. 1386-1387.) Thus, the use of the word "service" indicates that the Legislature intended something more than simply retirement. Rather, we believe it intended for the retirement program to define the amount of service necessary to vest in the program. Here, qualifying for PARS did not depend upon meeting a certain threshold for years of service. Indeed, PARS was completely separate from the retirement provision set forth in Order R-33. Haas's retirement pursuant to Order R-33 was simply an honorary recognition for years of service; it had no attendant monetary consequence. Moreover, the brief description and contract issued to the employees made it clear that PARS was not designed to relate to the amount of service, but simply to comply with the federal requirements under OBRA.

When construing a statute and interpreting the exemption to the general prohibition against carrying concealed weapons, we must consider " ' "only those circumstances that are within the words and reason of the exception. . . ." ' " (*City of Lafayette v. East Bay Mun. Utility Dist., supra,* 16 Cal.App.4th at p. 1017.) Accordingly, by including an express requirement to exempt a peace officer qualifying for and accepting a service or disability

retirement, we conclude the Legislature intended to exclude reserve officers and short-term officers. Haas retired after more than 20 years of service, but he received no retirement plan or financial remuneration as a result of those years of service. He did receive the PARS retirement plan, but his receipt of that money did not depend upon his reaching a certain age or being employed by the police department for a certain number of years, and he did not receive a retirement allowance benefit. In fact, according to the police department's reserve manual section 1.8, as reported by the Berkeley City Attorney, upon retirement, reserve officers are not entitled to any retirement benefits, payments, or allowances.

In addition, we must construe the meaning of section 12027, while keeping in mind that it " ' " 'must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' " ' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].) The Legislature defined reserve officers as a category of peace officers under section 830.6. Section 12050, subdivision (a)(1)(C), provides that a police chief has the discretion to decide whether to issue an active reserve officer a license to carry a concealed weapon.[4] Further, if the police chief decides to issue a license to carry a concealed weapon to an active reserve officer, the reserve officer's concealed weapons license "shall be invalid upon the conclusion of the person's appointment pursuant to Section 830.6 . . . ." (§ 12050, subd. (a)(2)(B).)

Since the Legislature makes it clear that active reserve officers can only carry concealed weapons at the discretion of the police chief, it seems extremely unlikely that it intended retired reserve officers to be automatically entitled to a CCW endorsement. Further, the Legislature had no reason to invalidate a reserve officer's concealed weapons license immediately upon separation under section 12050, subdivision (a)(2)(B), if it intended, under another statute, to immediately and automatically give a retiring reserve officer a CCW endorsement. Rather, as respondents maintain, section 12050 indicates that the Legislature intended to treat reserve officers differently from full-time or part-time employed officers.

Haas argues that section 12050, which allows members of the general public and reserve officers to apply for a license to carry a concealed

---

[4]Section 12050, subdivision (a)(1)(C), provides: "The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a person who has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 by that sheriff or that chief of police or other head of a municipal police department, may issue to that person a license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person. . . ."

weapon, is irrelevant to the issuance of CCW endorsements. He cites an opinion by the Attorney General that emphasizes the difference between a license issued under section 12050 and CCW endorsements. (80 Ops.Cal.Atty.Gen. 100 (1997).) The former is highly discretionary and, unlike the revocation of a CCW endorsement, does not entitle the person to an evidentiary hearing.

We agree that the processes for issuing a license authorizing a person to carry a concealed weapon and for issuing a CCW endorsement differ significantly. However, as respondents point out, the fact that the Legislature has included reserve police officers in the statutes governing the issuance of the licenses to the general public indicates that reserve police officers are to be treated more like the public than full-time or part-time regularly employed police officers. Thus, Haas may obtain permission to carry a concealed weapon under section 12050, but he is not eligible for the CCW endorsement under section 12027.[5]

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs.

Kline, P. J., and Haerle, J., concurred.

---

[5]Respondents also assert that Haas is not entitled to an evidentiary hearing. We need not address this issue because Haas has not raised this as an issue on appeal.