[No. B162197. Second Dist., Div. Seven. Aug. 14, 2003.]

CITY OF LONG BEACH, Plaintiff and Appellant, v.
CALIFORNIA CITIZENS FOR NEIGHBORHOOD EMPOWERMENT, et
al., Defendants and Respondents.

---

## Counsel

Robert E. Shannon, City Attorney, and Michelle Gardner, Deputy City Attorney, for Plaintiff and Appellant.

Reed & Davidson, Dana W. Reed and Bradley W. Hertz for Defendants and Respondents.

**OPINION**

**WOODS, J.**—Appellant City of Long Beach (the City) timely appealed from the order of the trial court dismissing the City's complaint for damages and injunctive relief against respondents California Citizens for Neighborhood Empowerment (CCNE) and its treasurer, Kinde Durkee. The City argues its complaint was not subject to the special motion to·strike made pursuant to Code of Civil Procedure section[1] 425.16. The City also argues, assuming arguendo that section 425.16 does apply, it demonstrated a clear probability that it would prevail on the merits, as required by the statute.

The legislative history of section 425.16 makes it clear the statute was never intended to apply to matters such as this enforcement action.

Accordingly, we reverse and remand with directions.

### FACTUAL AND PROCEDURAL HISTORY

On April 17, 2002, the City filed a complaint against CCNE and Durkee. The complaint's first cause of action alleged that prior to the April 9, 2002, election for mayor of Long Beach, CCNE accepted campaign contributions from individuals for the purpose of making independent expenditures in support of one of the mayoral candidates and that certain of those contributions were in excess of the limit set forth in sections 2.01.310 and 2.01.610 of the Long Beach Municipal Code (LBMC).

[2] The complaint's second cause of action alleged that CCNE failed to timely notify the Long Beach City Clerk and all other candidates of independent expenditures made by CCNE in support of or in opposition to any candidate, as required by LBMC section 2.01.630. The third cause of action sought injunctive relief from further violations.

CCNE thereafter filed a special motion to strike the complaint pursuant to section 425.16,[3] claiming the lawsuit was aimed at denying CCNE its

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[2] LBMC section 2.01.310 provides that no "person" (defined to include any individual, organization, or political action committee) shall make a contribution in support of or in opposition to a candidate in a city election in excess of $600. LBMC section 2.01.610 provides that no "person" who makes an independent expenditure in support of or in opposition to a candidate in a city election shall accept any contribution in excess of $600. (According to the code, the original limit set forth in the statute was later raised to $600.)

[3] Under section 425.16, subdivision (b)(1), a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike." The statute defines an "act in furtherance" as including "any other

constitutionally protected freedom of speech.[4] The trial court granted the motion to strike, holding that section 425.16 was applicable to the instant complaint and that the City had failed to offer a prima facie showing of facts that would, if proven, support a judgment.

## DISCUSSION

### I. *Section 425.16 Is Not Applicable Here.*

#### A. *Standard of Review.*

The primary issue in this case is one of statutory construction. ▮ Statutory construction presents a question of law which this court reviews de novo. (*Haas v. Meisner* (2002) 103 Cal.App.4th 580, 585–586 [126 Cal.Rptr.2d 843].)

#### B. *Rules of Statutory Construction.*

The court's "role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].) "[A] construction making some words surplusage is to be avoided." (*Watkins v. Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].)

Application of these rules is sometimes difficult, however. For example, other rules of construction teach that the " ' "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) Thus, " '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to

---

conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Section 425.16 is frequently referred to as the "anti-SLAPP" statute, the initials SLAPP standing for Strategic Lawsuit Against Public Participation.

[4] The constitutionality of the City statute was not raised below, and therefore we do not address it here.

conform to the spirit of the act.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ Our foremost task remains ascertainment of the legislative intent, including consideration of "the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) We must always give due regard to "the object to be achieved and the evil to be prevented by the legislation." (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].)

### C.   *The Parties' Contentions.*

Appellant contends the anti-SLAPP statute was not intended to apply to this enforcement action. Respondents disagree, pointing out that the language of the statute specifically exempts "enforcement actions *brought in the name of the people of the State of California* by the Attorney General, district attorney, or city attorney, *acting as a public prosecutor.*" (Italics added.) (§ 425.16, subd. (d).) Respondents argue that the plaintiff herein is "City of Long Beach, a municipal corporation," not "the people of the State of California," and that the Long Beach City Attorney is not "acting as a public prosecutor," since the proceeding is a civil action, not a criminal case. Thus, respondents conclude, the complaint is not exempted by the language of section 425.16, subdivision (d), as it is a civil action brought by a municipality.

Appellant argues that through its city attorney, it is responsible for enforcing municipal laws on behalf of its residents—a subset of "the people of the State of California." Appellant argues that interpreting section 425.16, subdivision (d) to exempt only criminal prosecutions would clearly exalt form over substance and result in the unsupportable conclusion that section 425.16 applies to the civil enforcement provisions of the City statute, but not the optional criminal enforcement provisions.[5]

### D.   *Legislative History of Section 425.16.*

An examination of the origins of section 425.16 reveals that respondents' arguments, while imaginative, are flawed, and if accepted, would result in the stretching of the statute far beyond the bounds originally intended by the Legislature.

---

[5] The LBMC sets out both criminal and civil penalties for any violation of the Long Beach Campaign Reform Act's provisions. (See §§ 2.01.1110–2.01.1120.)

Unfortunately, there is no discussion in the legislative history as to why the authors of section 425.16 chose to use the particular language "enforcement actions *brought in the name of the people of the State of California* by the Attorney General, district attorney, or city attorney, *acting as a public prosecutor*" in subdivision (d). (Italics added.) However, the identical language was later added to section 998, which covers the withholding or augmenting of costs following rejection or acceptance of an offer to compromise, and the legislative history of that statute sheds light on the origin of the exemption as well as the policy reasons for its inclusion.[6]

The legislative history of section 998 explains that the provision was originally included in section 425.16 at the request of the Attorney General, not to provide an exemption that otherwise would have been nonexistent, but rather to confirm the existence of the prosecutorial exemption assumed by the drafters. (Sen. Com. on Judiciary, Analysis of California Assem. Bill No. 732 (2001–2002 Res. Sess.), July 3, 2001, p. 5.) Further, it was intended that the 998 exception apply broadly to "civil enforcement actions" seeking injunctions, restitution and civil penalties, but not damages. Thus, in 2001 the Legislature understood the language at issue in this case (albeit in the context of section 998) to encompass the type of lawsuit now before us.

Respondents argue that only those civil enforcement actions brought literally in the name of the People of the State of California by a government lawyer acting as a public prosecutor fall within the ambit of the section 425.16 subdivision (d) exception. There is no question that subdivision (d) applies to civil enforcement actions. (See *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 446–447 [104 Cal.Rptr.2d 618].) The issue is whether it applies only to those civil enforcement actions initiated in the name of the People of the State of California or, notwithstanding the literal language of the subdivision, applies more broadly to any civil enforcement action initiated by a city attorney, county counsel, district attorney or attorney general to enforce laws intended to protect the public.

As discussed in *Health Laboratories*, an examination of the legislative history of section 425.16 shows there was concern on the part of the state

---

[6] "Although a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed." (*Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289]; see *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 788 [286 Cal.Rptr. 57] ["Although subsequent legislation cannot change the meaning of an earlier enactment, it does supply an indication of legislative intent which may be considered with other factors in arriving at the true intent existing when the legislation was enacted."].)

Attorney General that the statute as initially introduced (without the exemption) might impair the ability of state and local agencies to enforce certain consumer protection laws. (*People v. Health Laboratories of North America, Inc., supra,* 87 Cal.App.4th at pp. 446–447.) The version finally signed into law contained the exemption at issue here. Although, as respondents point out, the literal language of the exemption does refer to actions "brought in the name of the people of the State of California," it is reasonable to infer that the measure was designed to address the Attorney General's concern, which extended to all civil actions brought by state and local agencies to enforce laws aimed at consumer and/or public protection.

To plainly ascertain the Legislature's intent in passing the statute, though, further inquiry is necessary. In signing the original bill into law, then Governor Pete Wilson stated, "This legislation will give courts new powers to throw out frivolous lawsuits whose only intent is to cut off public debate and stifle free speech." (*Bill to Curb SLAPP Lawsuits Obtains Governor's Signature,* L. A. Daily J. (Sept. 18, 1992).) According to the legislative history of section 425.16, SLAPP suits "are generally suits for malicious prosecution or interference with economic opportunity brought by property owners or developers against those speaking out against their development plans." (Governor's Off. of Planning and Research, Enrolled Bill Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.), as amended June 29, 1992, p. 3.) The author of the legislation, then Senator Bill Lockyer, believed "these lawsuits are intended primarily to 'chill' the valid exercise of the right of free speech and are filed for the sole purpose of intimidating legitimate protestors." (*Ibid.*)

In its comments on the proposed legislation, the Assembly Subcommittee on the Administration of Justice stated that "SLAPP suits are not filed with the intent to obtain a final judgment on the merits, but, rather, to force defendants to incur defense costs and, consequently, remove their opposition to a controversial development project, for example. The purpose of SLAPP suits is to intimidate and silence the opponents of SLAPP suit plaintiffs." (Assem. Subcom. on the Admin. of J., Rep. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.), as amended Mar. 26, 1992, p. 4.)

In contrast, as the court pointed out in *Health Laboratories,* "a public prosecutor's enforcement action is not motivated by a retaliatory attempt to gain a personal advantage over a defendant who has challenged his or her economic ambition. The prosecutor's motive derives from the constitutional mandate to assure that the laws of the state are uniformly enforced and to prosecute any violation of these laws, so that order is preserved and the public interest protected." (*People v. Health Laboratories of North America, Inc., supra,* 87 Cal.App.4th at p. 450.) The court observed, "Nothing in the

legislative history of section 425.16 implies that the problem the Legislature sought to rectify thereby was created by prosecutors bringing meritless enforcement actions." (*Ibid.*)

We also note that following respondents' reasoning, any political committee could avoid having to comply with local election laws simply by declaring itself a "statewide" committee and making nominal contributions to candidates in various locales. As noted above, it is clear this result is not what the Legislature intended to achieve in passing the anti-SLAPP statute, and respondents cannot use section 425.16 as a shield behind which to hide from otherwise valid local election regulations.

■ Accordingly, we conclude that appellant's action was exempt from the anti-SLAPP statute and that the court erred in finding the statute applicable. Given our holding, we need not address other issues raised by the parties.

### DISPOSITION

The order is reversed, and the matter is remanded to the trial court with directions to enter an order denying respondents' motion to strike. Appellant to recover costs on appeal.

Perluss, P. J., and Munoz (Aurelio), J.*, concurred.

A petition for a rehearing was denied September 5, 2003, and respondents' petition for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.