Filed 8/18/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THE MCGRAW-HILL COMPANIES,<br>INC. et al.,<br><br>    Defendants and Appellants. | A140922<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-13-528491) |

The People, by and through the Attorney General, brought this action against McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC (defendants) for statutory violations arising out of defendants' alleged business practice of inflating their credit ratings of various structured finance securities. The complaint alleged four causes of action, including two for violations of the California False Claims Act (CFCA). Defendants filed a special motion to strike the CFCA causes of action pursuant to section 425.16, subdivision (b) of the Code of Civil Procedure, the anti-SLAPP statute.[1] The superior court denied the motion on the ground that the People's enforcement action was exempt from the special motion to strike procedure pursuant to section 425.16, subdivision (d), which provides that "This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor." Defendants filed a notice of appeal.

---

[1] All statutory references are to the Code of Civil Procedure. And, to facilitate a clear analysis, we refer to the relevant provisions of section 425.16 by their subdivision designation.

1

The People filed a motion to dismiss the appeal, challenging this court's jurisdiction to review the trial court's order, relying on the express language of subdivision (d). Defendants opposed the motion, contending that this appeal is authorized by the express language of subdivision (i), which provides that "[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1." The motion was thoroughly briefed, and we held oral argument, which was vigorous indeed. We now rule, concluding that the order is not appealable, and we therefore grant the motion to dismiss the appeal.[2]

## BACKGROUND

### Section 425.16

"In 1992, the Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315; see also *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 (*Varian*) [section 425.16 enacted in order "to prevent and deter" SLAPP suits " 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' "].)

"Section 425.16 authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. It establishes a procedure by which the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1546-1547.)

This special motion to strike procedure implements subdivision (b) of the statute which states: "A cause of action against a person arising from any act of that person in

_____

[2] In light of our disposition of this motion, we deny defendants' request for judicial notice which was filed in support of the merits of their appeal.

2

furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

When section 425.16 was originally proposed, the Attorney General expressed concern that it "might impair the ability of state and local agencies to enforce certain consumer protection laws." (*City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, 307-308 (*City of Long Beach*).) Thereafter, the Governor vetoed versions of the bill that failed to address this concern. (See *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 447 (*Health Labs*). Eventually, a provision was added to the proposed statute which recognized a prosecutorial exemption for enforcement actions to protect the consumer and/or the public. With the addition of this express exemption, the anti-SLAPP statute was enacted in 1992. (*Ibid.*) This exemption is set forth in subdivision (d), which states that section 425.16 "shall not apply to any enforcement action" brought by a public prosecutor.

"As originally enacted in 1992, section 425.16 contained no provision for an immediate appeal of orders made pursuant to that section. [Citation.] Orders made pursuant to section 425.16 could be reviewed only as an appeal after judgment [citations] or by petition for an extraordinary writ. . . . [¶] In 1999 the Legislature added former section 425.16, subdivision (j) . . , providing an appeal may be taken directly from an order granting or denying a special motion to strike under section 425.16." (*Doe v. Luster* (2006) 145 Cal.App.4th 139, 144-145 (*Doe*).) "The Legislature found it necessary to enact [former] subdivision (j) because, without the ability to appeal, a SLAPP 'defendant will have to incur the cost of a lawsuit before having his or her right to free speech vindicated.' [Citation.]" (*Varian, supra*, 35 Cal.4th at p. 194.) This direct appeal provision is now set forth in subdivision (i), which states that orders granting or denying

a special motion to strike "shall be appealable under Section 904.1." And it is subdivision (i) on which defendants base their appeal.[3]

### The Parties' Contentions

The People contend that this appeal must be dismissed because the express language of subdivision (d) exempts this action from the direct appeal procedure set forth in subdivision (i). According to the People, the phrase "this section shall not apply" in subdivision (d) means what it says: that all of section 425.16, including subdivision (i), does not apply to a prosecutor's enforcement action. The People also contend that the Legislature never intended for subdivision (d) findings to be subject to immediate appellate review.

Defendants contend the trial court's subdivision (d) order is made appealable by subdivision (i). They argue that there is nothing unclear or ambiguous about subdivision (i)'s statutory language which explicitly authorizes their appeal from the order denying their special motion to strike. Defendants also argue that the history of the anti-SLAPP statute reflects a legislative intent to create a right to immediately appeal any order granting or denying a special motion to strike.

### DISCUSSION

Although each party invokes a different provision of the anti-SLAPP statute, their respective interpretations are mutually exclusive. To resolve this conflict, we apply settled rules of statutory construction.

" 'When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent.' [Citations.] The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a

---

[3] Actually, defendants also cite to section 904.1, subdivision (a)(13), which states that an appeal may be taken from "an order granting or denying a special motion to strike under Section 425.16." That subdivision was added to section 904.1 in 1999, to accommodate the newly added section 425.16, subdivision (j), now subdivision (i). (Stats. 1999, ch. 960 (A.B. 1675). It thus adds nothing to defendants' position.

4

'commonsense' meaning when it noted: ' "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" [Citation.]' [Citation.] Further, our Supreme Court has noted, ' " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " ' [Citations.]" (*Goldstein v. Ralphs Grocery Co.* (2004) 122 Cal.App.4th 229, 233.)

Because this case requires us to interpret language from two subdivisions of the anti-SLAPP statute, we are particularly guided by the rule requiring us to "consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)

Applying these rules leads to several conclusions.

First, subdivision (b) is the linchpin of the anti-SLAPP statute: it authorizes the motion to strike procedure established by the Legislature in order to protect acts in furtherance of the constitutional rights to free speech and petition.

Second, subdivision (d) completely exempts public enforcement actions from the subdivision (b) motion to strike procedure. Thus, for example, a subdivision (d) order does not require any judicial assessment of the nature of the defendant's conduct or substantive evaluation of the merits of the plaintiff's lawsuit. Rather, as stated by our colleagues in Division Five, the "anti-SLAPP remedy is unavailable" to a defendant in an action brought by a public prosecutor. (*Health Labs, supra,* 87 Cal.App.4th at p. 448.)

Third, the direct appeal right created by subdivision (i) unequivocally applies to an order granting or denying a special motion to strike pursuant to the procedures promulgated to implement subdivision (b).

Finally, the direct appeal provision in subdivision (i) cannot be stretched to apply to a trial court determination that an action is exempt from the anti-SLAPP statute under subdivision (d). Subdivision (i) authorizes a direct appeal from a ruling on the merits of a

5

subdivision (b) special motion to strike. A subdivision (d) order is not a ruling on the merits of a special motion to strike, but rather a determination that the entire anti-SLAPP procedure does not apply to the case.

Defendants contend that the broad language of subdivision (i) manifests the Legislature's "unambiguous intent that an immediate appeal should be available from any order granting or denying a motion to dismiss under section 425.16." However, interpreting subdivision (i) as authorizing an immediate appeal from a subdivision (d) finding would undermine the very function of the subdivision (d) exemption, subjecting the public prosecutor's action to a specific type of judicial scrutiny that the exemption expressly prohibits. Moreover, defendants' over-broad construction of subdivision (i) not only fails to account for the language in subdivision (d), it would render that exemption meaningless, something a reasonable Legislature would not have intended.

Defendants argue that the timing of the adoption of the two subdivisions reflects a legislative intent to authorize an immediate appeal from a subdivision (d) order. As noted above, subdivision (d) was part of the original anti-SLAPP statute enacted by the Legislature in 1992. Subdivision (i), on the other hand, was added by a 1999 amendment. So, defendants reason, if the Legislature had intended to except public enforcement actions from the broad right to an immediate appeal created by subdivision (i), "it would have said so." This argument, however, ignores what the plain language of subdivision (d) actually says: the anti-SLAPP statute does not apply to prosecutor enforcement actions. In light of this preexisting exemption, it was not necessary for the Legislature to expressly carve out another exemption for public prosecutor actions in the text of subdivision (i). [4]

_____

[4] This also disposes of defendants' reliance on exemptions to the anti-SLAPP statute contained in section 425.17, which was added in 2003. (See generally *Goldstein, supra,* 122 Cal.App.4th at p. 232.) Defendants argue that section 425.17, subdivision (e) shows that the Legislature knew how to create an exemption from the right of immediate appeal under subdivision (i) (and section 904.1, subd. (a)(13)), but did not do so for public prosecution actions. However, nothing more was needed for public prosecutor actions because of the clear language of subdivision (d) and its legislative history.

6

Defendants also contend that published authority compels the conclusion that subdivision (d) orders are immediately appealable under subdivision (i), citing three cases: *Health Labs, supra,* 87 Cal.App.4th 442; *City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606; and *People ex re Lockyer v. Brar* (2004) 115 Cal.App.4th 1315. The essence of defendants' argument is that in these cases the courts considered the merits of appeals from subdivision (d) orders.

As best we can determine—and, from comments by defendants' counsel at oral argument, as best he can determine—no party in any of these three cases questioned the appellate court's jurisdiction. Certainly, the opinions do not address the question whether a subdivision (d) order is appealable under subdivision (i). They thus do not avail defendants: " 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.' [Citation.]" (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680; see also *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered"]; *Palmer v. GTE California, Inc*. (2003) 30 Cal.4th 1265, 1278 [quoting *Ginns*].)

Citing *Olson v. Corey* (1983) 35 Cal.3d 390, 398 (*Olson*), defendants contend that an appellate court "necessarily" affirms its jurisdiction by hearing an appeal "[b]ecause courts are required to consider jurisdictional issues without regard to whether they are raised by the parties." Defendants' reliance on *Olson* is misplaced. In that case, one party filed a brief suggesting that the appeal had been taken from an nonappealable order, but all of the material parties urged the court to review the ruling on the merits. Rejecting that proposal, the *Olson* court stated that "since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion." (*Id*. at p. 398.) *Olson* is relevant here because, as happened there, doubt about the appealability of the order in question has been brought to the court's attention. *Olson* does not, however, support defendants' very different contention: that appellate courts must search for jurisdictional problems never raised by the parties.

7

Furthermore, defendants overlook *Doe, supra*, 145 Cal.App.4th 139, a case holding that the denial of a motion for attorney fees pursuant to subdivision (c) of section 425.16 is not immediately appealable under subdivision (i). There, the defendant argued that the order was appealable because other appellate courts had entertained interlocutory appeals from subdivision (c) orders. (*Id*. at p. 150.) Rejecting the argument, the court concluded, among other things, that a judicial opinion addressing the merits of an appeal which "does not suggest either that the parties raised the jurisdictional issue or that the court considered it" is not authority for the proposition that the order is actually appealable. (*Ibid*.)

As noted at the outset of our analysis, both parties claim support for their respective theories in the legislative history of the anti-SLAPP statute. We question the need to resort to arguments about what the Legislature may have intended. (See *Goldstein, supra*, 122 Cal.App.4th at p. 233 [if statutory language is clear, no need to resort the legislative history].) Section 425.16 is not ambiguous when its subdivisions are considered together rather than at odds with each other.

But were it relevant to this discussion, the legislative history of section 425.16 reinforces our conclusion that decisions against defendants under subdivision (d) are not immediately appealable. "The legislative history of section 425.16 plainly implies" that its purpose was to prevent the harm caused by SLAPP plaintiffs, litigants who "do not care so much about winning their lawsuits as they care about delaying and distracting the defendant from his or her objective, which is generally economically adverse to those of the SLAPP plaintiff. SLAPP plaintiffs achieve their goal if their suits deplete the defendant's resources and energy. [Citations.]" (*Health Labs, supra,* 87 Cal.App.4th at p. 450; see also *City of Long Beach, supra*, 111 Cal.App.4th at pp. 308-309.)

But by their very definition public prosecutor enforcement actions are not SLAPP cases. "[A] public prosecutor's enforcement action is not motivated by a retaliatory attempt to gain a personal advantage over a defendant who has challenged his or her economic ambition. The prosecutor's motive derives from the constitutional mandate to assure that the laws of the state are uniformly enforced and to prosecute any violation of

8

these laws, so that order is preserved and the public interest protected. [Citations.] Nothing in the legislative history of section 425.16 implies that the problem the Legislature sought to rectify thereby was created by prosecutors bringing meritless enforcements actions." (*Health Labs, supra*, 87 Cal.App.4th at p. 450.)

To the contrary, the legislative history shows that the subdivision (d) exemption was enacted in order to preclude defendants from using the anti-SLAPP statute to impair the ability of state and local agencies to enforce consumer protection laws. (*Health Labs, supra,* 87 Cal.App.4th at pp. 446-447; *City of Long Beach, supra*, 111 Cal.App.4th at pp. 307-308.) Subjecting public prosecutors to the direct appeal process authorized by subdivision (i) would undermine legislative intent, because it would impede the public prosecutor's efforts to protect the health and safety of the citizenry, delaying the enforcement action while the defendant pursues an appeal of the subdivision (d) determination.

Defendants contend that the legislative history leading to subdivision (i) reflects an intent that every ruling on a special motion to strike would be subject to immediate appellate review. Specifically, they rely on evidence that proponents of the immediate appeal provision expressed concern that without the ability to directly appeal a section 425.16 order, a defendant in an actual SLAPP suit might have to incur the cost of a lawsuit before having his or her right to free speech vindicated. (*See Brar, supra*, 115 Cal.App.4th at p. 1317-1318; *Doe, supra*, 145 Cal.App.4th at p. 147.)

As we recognized in a case that did not involve the subdivision (d) exemption, the right to appeal can be important to the extent it protects defendants from the consequences of an erroneous denial of a meritorious anti-SLAPP motion. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 1000.) That said, we went on in *Grewal*, in a section entitled "A Losing Defendant's Right to Appeal Is the Aspect of the Anti-SLAPP Statute Most Subject to Abuse" (*id*. at p. 1000-1003), to discuss Supreme Court and Court of Appeal opinions reflecting on the possibility for abuse, including quoting this observation by the Supreme Court in *Varian, supra,* 35 Cal.4th at p. 195: "In light of our holding today, some anti-SLAPP appeals will undoubtedly delay litigation even though

9

the appeal is frivolous or insubstantial. As the Court of Appeal observed and plaintiffs contend, such a result may encourage defendants to 'misuse the [anti-SLAPP] motions to delay meritorious litigation or for other purely strategic purposes.' " These concerns are a fortiori applicable here—an enforcement action by a public prosecutor.

*Health Labs, supra*, 87 Cal.App.4th 442, one of the cases relied on by defendants, concludes with this terse summation, one pointedly applicable here: "We conclude that the classification created by subdivision (d)'s exemption of public prosecutors' enforcement actions from anti-SLAPP motions bears directly on furthering the state's legitimate interest of allowing prosecutors—who did not create the SLAPP problem—to pursue actions to enforce laws, unencumbered by delay, intimidation, or distraction." (*Id.* at p. 451.)

## DISPOSITION

The appeal is dismissed.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Brick, J.*




* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. McGraw-Hill Companies, Inc. et al.* (A140922)

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Honorable Curtis E.A. Karnow |
| Attorneys for Defendants and Appellants: | Morrison & Foerster, Melvin R. Goldman, Ryan G. Hassanein, Nicholas Napolitan; Cahill Gordon & Reindel, Floyd Abrams, Adam Zurofsky, Jason M. Hall, Peter J. Linken |
| Attorneys for Plaintiff and Respondent: | Kamala D. Harris, Attorney General, Martin Goyette, Senior Assistant Attorney General, Fredrick W. Acker, Deputy Attorney General |