Filed 11/24/20  P. v. Franco CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DANNY FRANCO,<br><br>  Defendant and Appellant. | H047797<br>(Monterey County<br> Super. Ct. No. SS062690) |

## I.    INTRODUCTION

On November 16, 2010, defendant pleaded no contest to attempted murder (Pen. Code, §§ 664/187, sub. (a)),[1] assault with a firearm on a peace officer (§ 245, subd. (d)(1)), and evading a peace officer (Veh. Code, § 2800.2, subd. (a)), and admitted the allegations that he committed the attempted murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and had a prior strike adjudication (§ 667, subd. (e)(1)). Pursuant to a negotiated disposition, defendant was sentenced to 25 years 4 months.

On September 27, 2019, defendant filed a petition for resentencing pursuant to section 1170.95, which allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction under recent changes to the law.  After briefing by both parties, the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

sentencing court denied the petition finding that defendant was ineligible for relief because he was not convicted of murder.

Defendant contends the trial court erred when it denied the petition because Senate Bill No. 1437 (SB 1437), which added section 1170.95, should be interpreted to apply to convictions of attempted murder under the natural and probable consequences doctrine. Defendant alternatively contends that SB 1437's failure to provide retroactive relief to individuals convicted of attempted murder violates the equal protection clauses of the state and federal constitutions. Citing this court's decision in *People v. Alaybue* (2020) 51 Cal.App.5th 207 (*Alaybue*), the Attorney General counters that SB 1437 does not apply to attempted murder. The Attorney General further asserts that the law's failure to provide retroactive relief to attempted murderers does not result in an equal protection violation because individuals convicted of attempted murder are not similarly situated to offenders convicted of murder and there is a rational basis to distinguish the two groups.

For reasons that we will explain, we affirm the order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*[2]

On the evening of September 16, 2006, Salinas police were called regarding a gang-related shooting that occurred near East Market Street and Paloma Avenue. It was reported that two Hispanic males confronted a group of five Hispanics. As the two suspects approached the group, they asked, " 'Where are you vatos from? Are you vatos scrapas?' " The victims did not recognize the suspects but stated that one wore a red cap with the letter " 'P.' " When John Doe responded, " '[W]e don't bang,' " the person wearing the red cap pulled out a gun and shot into the group. The two suspects fled in their SUV.

---

[2] The facts are taken from the probation report.

Doe followed the suspects as they drove toward Highway 101. Doe called the police and provided a description of the suspects' vehicle and its license plate number. At some point, Doe ended his pursuit because he feared the suspects would shoot at him again.

Officers located the suspects' vehicle and began pursuit. The officers attempted to stop the vehicle but the suspects failed to yield. The suspects drove into a cul-de-sac. Officers positioned themselves for a high-risk stop and yelled out verbal commands for the suspects to surrender. After a brief period, the right front passenger, Ivan Leon, opened his door and got out of the vehicle armed with a firearm. Leon faced the officers and fired twice in their direction. The officers returned fire, killing Leon. A revolver was recovered next to Leon's body. The officers placed defendant, who was the driver, and a juvenile, who was in the right rear passenger seat, under arrest.

During a search of the suspects' vehicle, officers found a semi-automatic pistol with a loaded magazine. The red cap worn by the suspect who shot into the group was located in the rear passenger area of the SUV. Norteño gang indicia was also recovered in the vehicle.

Defendant admitted in an interview that he saw a gun in a backpack located in the front passenger area of the SUV when he first entered the vehicle. Defendant acknowledged that his association with Leon and the juvenile was a violation of his parole because they were known gang members. Defendant denied any participation in or knowledge of the shooting near East Market Street and Paloma Avenue and maintained throughout the interview that he met up with Leon prior to the police pursuit.

Defendant stated in the interview that Leon asked him to drive the SUV because he had a license. A few minutes later, when defendant saw the officers, Leon yelled at him to " '[g]o, go, go!' " Leon directed defendant where to drive. Defendant admitted that he decided to evade the officers because he was aware that he was in violation of his parole based on his association with known gang members and his knowledge that there

3

were firearms in the car. Defendant stated that his prints would be found on the weapon because he " 'pushed' " the gun from the center console with his hand.[3] Defendant denied using the weapon in a threatening manner.

Investigating officers determined that defendant, Leon, and the juvenile were Norteño gang members. Search warrants were executed at the suspects' residences where numerous pieces of gang indicia were recovered in each of the suspects' bedrooms. Police were unable to determine who shot into Doe's group.

### B.      *Procedural History*

On November 16, 2010, defendant was charged by amended information with gang conspiracy (§ 182.5; count 1); shooting at an occupied vehicle (§ 246; count 2); attempted murder (§§ 664/187, subd. (a); counts 3-6); assault with a firearm (§ 245, subd. (a)(2); counts 7-10); street terrorism (§ 186.22, subd. (a); count 11); assault with a firearm on a peace officer (§ 245, subd. (d)(1); count 12); unlawful firearm activity (§ 12021, subd. (e); counts 13 &14); possession of an assault weapon, (§ 12280, subd. (b); count 15); concealing a firearm in a vehicle (§ 12025, subd. (a)(1); counts 16 & 18); carrying a loaded firearm in a vehicle (§ 12031, subd. (a)(1); counts 17 & 19); evading a peace officer (Veh. Code § 2800.2, subd. (a); count 20); and street terrorism (§ 186.22, subd. (a); count 21). It was also alleged that defendant committed all the offenses except counts 1, 11, and 21 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and that defendant had a prior strike adjudication (§ 667, subd. (e)(1)).

Pursuant to a negotiated disposition, defendant pleaded no contest to one count of attempted murder, assault with a firearm on a peace officer, and evading a peace officer, and admitted that he committed the attempted murder for the benefit of a criminal street gang and that he had a prior strike adjudication. Defendant was sentenced to 25 years 4 months.

---

[3] It is unclear from the probation report whether defendant was referring to Leon's revolver or the semi-automatic pistol found in the vehicle.

On September 27, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. After briefing by both parties, the sentencing court denied the petition because defendant "was never charged with murder, nor did his negotiated disposition include a plea to a charge of first or second degree murder. He is ineligible for relief."

### III. DISCUSSION

Defendant contends the trial court erred when it determined he was ineligible for section 1170.95 relief because he was not convicted of murder. Defendant argues that "this court should construe section 1170.95 as impliedly applying to a conviction for attempted murder under the natural and probable consequences doctrine" in order to "comport[] with the stated goal of [SB] 1437 of ensuring that a defendant's culpability under homicide law is premised upon his or her own actions and subjective mens rea." Defendant alternatively contends that the law's failure to provide retroactive relief for those convicted of attempted murder violates the equal protection clauses of the state and federal constitutions.

#### A. *SB 1437*

The Legislature enacted SB 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) The Legislature amended section 189 by adding

5

subdivision (e), which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

In addition to the amendments to sections 188 and 189, SB 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

B. *Standard of Review*

Questions of statutory interpretation and a statute's constitutionality are reviewed de novo. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.)

6

### C. *Applicability of SB 1437 to Attempted Murder*

The Courts of Appeal have reached different conclusions regarding whether SB 1437 applies to the crime of attempted murder, and the issue is currently before the California Supreme Court. (See, e.g., *People v. Munoz* (2019) 39 Cal.App.5th 738, 753 (*Munoz*), review granted Nov. 26, 2019, S258234 [does not apply]; *People v. Lopez* (2019) 38 Cal.App.5th 1087 (*Lopez*), review granted Nov. 13, 2019, S258175 [does not apply]; *People v. Dennis* (2020) 47 Cal.App.5th 838, 844-847, review granted July 29, 2020, S262184 [does not apply]; *People v. Larios* (2019) 42 Cal.App.5th 956, 964-968, review granted Feb. 26, 2020, S259983 [does apply]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1013-1016, review granted Mar. 11, 2020, S259948 [does apply]; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642-644, review granted June 10, 2020, S261768 [does apply].)[4] In *Alaybue*, a different panel of this court held that SB 1437 does not apply to attempted murder. (*Alaybue*, *supra*, 51 Cal.App.5th at p. 222.) We concur with that decision and determine that section 1170.95 does not provide relief to offenders convicted of attempted murder.

As this court observed in *Alaybue*, SB 1437 clearly and unambiguously amended section 188 as it applies to the crime of murder. (*Alaybue*, *supra*, 51 Cal.App.5th at pp. 222-223.) Amended section 188 states that "[e]xcept as stated in subdivision (e) of Section 189, *in order to be convicted of murder*, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.) The second sentence of subdivision (a)(3), that " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime,' is expressly limited by the preceding language, which limits this new rule to murder convictions." (*Alaybue*, *supra*, at pp. 222-223.) Moreover,

---

[4] The California Supreme Court has framed the issue as follows: "Does Senate Bill No. 1437 (Stats. 2018, ch. 1015) apply to attempted murder liability under the natural and probable consequences doctrine?" (*Lopez*, review granted Nov. 13, 2019, S258175.)

7

newly added subdivision (e) of section 189 provides that a participant in enumerated offenses "in which *a death occurs* is *liable for murder* only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree."  (Italics added.)  Section 1170.95 also expressly pertains to murder convictions, providing, for example, that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition [for resentencing]."  (§ 1170.95, subd. (a).)

Noticeably absent from the amendments to sections 188 and 189 and newly added section 1170.95 is any mention of the crime of attempted murder.  "It is well established that ' "[a]n attempt is an offense 'separate' and 'distinct' from the completed crime." '  [Citation.]  A statute that 'expressly identifies the offenses within its scope, all of which are completed offenses,' is not ambiguous; '[h]ad the Legislature meant to include attempts among the covered offenses, it could easily have done so as it has done in other instances.'  [Citation.]"  (*Alaybue*, *supra*, 51 Cal.App.5th at p. 223.)

SB 1437's legislative history supports our conclusion that section 1170.95 does not apply to attempted murder convictions.  (See *Alaybue*, *supra*, 51 Cal.App.5th at pp. 223-224.)  For example, "[i]n discussing the potential number of persons who may petition for [section 1170.95] relief, the Senate Committee on Appropriations indicated that it would be difficult to determine the basis for a murder conviction, '[a]s the abstract of judgment reflects only the degree of conviction for *murder . . . .*'  (Sen. Com. on Appropriations, May 14, 2018 Report on Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced February 16, 2018, p. 3, italics added.)  The report went on to describe the 'overall population in state prison for a *murder conviction*,' and did so by tallying up 'inmates [who] were serving a term for the principal offense of *first-degree murder*' and '*second-degree murder*.'  (*Ibid.*, italics added.)"  (*Ibid.*)  In addition, "[i]n the uncodified

8

findings and declarations, the Legislature stated, in relevant part, that '[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*, to ensure that *murder liability* is not imposed on a person who is not the *actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) § 1, italics added.)" (*Id*. at p. 223.)

Defendant argues that the application of SB 1437 to murder but not attempted murder would result in absurd consequences because "a defendant convicted of an attempted murder under the natural and probable consequences doctrine would suffer a harsher penalty than a defendant convicted of a completed murder under the doctrine who obtained retroactive relief under [section 1170.95]." However, as this court pointed out in *Alaybue*, " '[t]o justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them.' [Citation.] . . . In deciding to omit attempted murder from the ambit of [SB] 1437, the Legislature could have reasonably concluded that the need to address sentencing reform was more appropriately directed at persons convicted of murder as opposed to attempted murder. This is so because the punishment for attempted murder is generally far less than the punishment imposed for murder." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 224; see §§ 190, subds. (a), (e), 664, subd. (a), 3046, subd. (a)(1).)

Defendant relies on *People v. King* (1993) 5 Cal.4th 59 (*King*), *People v. Barrajas* (1998) 62 Cal.App.4th 926 (*Barrajas*), *People v. Crowles* (1993) 20 Cal.App.4th 114 (*Crowles*), and *In re R.G.* (2019) 35 Cal.App.5th 141 (*R.G.*) to support his argument that section 1170.95 should be construed to apply to attempted murder convictions in order to avoid absurd consequences, but we find those cases distinguishable.

*King* involved a "sentencing anomaly" that resulted from series of statutory amendments over the course of years. (*People v. Cook* (2015) 60 Cal.4th 922, 938, fn. 2 [summarizing *King*].) "[A] literal interpretation of interrelated statutes would have meant

9

that some juveniles convicted of first degree murder would be eligible to be committed to the former California Youth Authority (CYA) rather than sentenced to state prison, but the same juveniles who merely *attempted* to commit first degree murder would be ineligible for such a commitment." (*Ibid.*) The California Supreme Court held that the legislative history showed an intent that "both successful and intended first degree murderers under the age of 18" be eligible for CYA commitment. (*King*, *supra*, 5 Cal.4th at p. 67.) The court reasoned that when the Legislature amended the punishment for attempted murder, "[i]t did not intend a lesser included offense to have potentially harsher penal consequences than the greater offense." (*Id.* at p. 69.) The court determined that "[t]he clear legislative intent . . . should prevail over any irrational result caused by the amendment of different statutes in separate codes at different times for unrelated purposes." (*Ibid.*)

However, as the Court of Appeal observed in *Munoz*, *supra*, 39 Cal.App.5th at page 759, unlike the statutory amendments at issue in *King*, SB 1437's "plain language is not the result of a disjointed series of amendments over time . . . from which we might infer inadvertence or irrationality. Instead, the relevant provisions are contained in a single cohesive bill." Moreover, "in *King* the effect of the series of amendments and judicial interpretations was stark: first degree murderers under 18 were eligible for CYA, whereas persons of the same age who committed attempted murder were not. Here, in contrast, [SB] 1437 does not *mandate* that persons convicted of attempted murder are punished more severely than persons convicted of murder. Attempted murderers are statutorily subject to a lesser, not a greater, penalty than murderers. [SB] 1437 does not require that attempted murderers receive a harsher sentence, or prohibit them from receiving a more lenient sentence, than murderers. On its face, [SB] 1437 does not

present the same clear-cut distinction as in *King*."[5] (*Munoz*, *supra*, at p. 759, italics added.) In any event, "[t]he remedy for any potentially inequitable operation of section 1170.95 lies with the Legislature. If the Legislature concludes it is unwise or inequitable to exclude attempted murderers from Senate Bill 1437's reach, it has only to amend the law." (*Id*. at p.760.)

Barrajas pertained to a drug diversion statute that included possession, but not attempted possession, as a divertible offense. (*Barrajas*, *supra*, 62 Cal.App.4th at p. 929.) The court held that the statute applied to a defendant who had attempted to possess methamphetamine because there was "no apparent reason consistent with [the statute's legislative] purpose to treat persons who attempted a divertible offense differently from those who completed it." (*Id.* at p. 930.) Unlike the plain language of the statute at issue in *Barrajas*, however, SB 1437 "does not preclude an attempted murderer from being sentenced to a lesser term than a murderer. To the extent a disparity might exist in an individual case, that circumstance is not sufficient to render the plain language of the statute absurd." (*Munoz*, *supra*, 39 Cal.App.5th at pp. 759-760.)

In *Crowles*, the court determined that the Legislature intended Health and Safety Code section 11590's registration requirements to apply to offenders convicted of attempts of the statutorily enumerated drug offenses. (*Crowles*, *supra*, 20 Cal.App.4th at p. 119.) The court reached this conclusion based on Health and Safety Code section 11590's language, which referenced attempts. (*Crowles*, *supra*, at p. 118.) If the statute was construed literally, "not only [would] the reference to attempts have no practical meaning, but persons convicted of attempting a serious drug offense would not be required to register while those convicted of a completed, but less serious offense, must register." (*Ibid.*) In contrast, here, neither the amendments to sections 188 and 189

---

[5] Similarly, *People v. Bullard* (2020) 9 Cal.5th 94, 105, on which defendant also relies, involved the interpretation of legislation to avoid the consequence that less serious criminal conduct be punished more severely than more culpable conduct.

nor newly enacted section 1170.95 references the crime of attempted murder. And, as stated, "the punishment for attempted murder is generally far less than the punishment imposed for murder." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 224.)

Finally, in *R.G.*, the court concluded that section 1170.95 applies to juvenile offenders despite the statute's use of terms generally inapplicable in juvenile proceedings, such as "conviction" and "sentence." (*R.G.*, *supra*, 35 Cal.App.5th at pp. 146, 151.) However, *R.G.*'s holding "was premised on several considerations specific to the juvenile law, including, inter alia, that provisions of the Welfare and Institutions Code specifically contemplate incorporating substantive criminal laws into juvenile proceedings, and excluding juveniles from . . . section 1170.95's reach could run afoul of the requirement that a juvenile may not be held in physical confinement for a period exceeding that which could be imposed upon an adult convicted of the same offense." (*Munoz*, *supra*, 39 Cal.App.5th at p. 756, fn. 19.) *R.G.* did not construe SB 1437 to apply to attempted murder.

For these reasons, we conclude that section 1170.95 does not apply to the offense of attempted murder. Thus, the trial court did not err when it denied defendant's section 1170.95 petition because he was convicted of attempted murder.

### D. *Equal Protection*

Defendant contends that if section 1170.95 provides retroactive relief to offenders convicted of murder but not those convicted of attempted murder, the law violates the equal protection clauses of the state and federal constitutions.

" 'The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.]' " (*People v. Valencia* (2017) 3 Cal.5th 347, 376.) Thus, to prevail on an equal protection claim, a defendant must first establish that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Brown* (2012) 54 Cal.4th 314, 328.) "If such a classification of similarly situated individuals

12

exists, a court must next ascertain whether the Legislature has a constitutionally sufficient reason to treat the groups differently."**6** (*Lopez*, *supra*, 38 Cal.App.5th at p. 1108.) We conclude there is no equal protection violation here.

"The aim of [SB] 1437, as clearly articulated in the Legislature's findings and declarations, is to effect 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1, subd. (b).)" (*Lopez*, *supra*, 38 Cal.App.5th at p. 1109.) "For purposes of that appropriate legislative objective, those charged with, or found guilty of, murder are, by definition, not similarly situated with individuals who face other, less serious charges." (*Ibid.*) "Murder and attempted murder are separate crimes. [Citations.] And murder is punished more severely than attempted murder. [Citations.] These different penal consequences necessarily mean, for purposes of sentencing reform, an individual charged with, or convicted of, murder under the natural and probable consequences doctrine is not similarly situated to an individual confronting a charge of attempted murder (or, possibly, only aggravated assault) under the doctrine. [Citation.]" (*Id.* at pp. 1109-1110.) Thus, because those convicted of attempted murder under the natural and probable consequences doctrine are not similarly situated to individuals convicted of murder under that doctrine, the Legislature may treat them differently. (*See id.* at p. 1110; accord, *Munoz*, *supra*, 39 Cal.App.5th at pp. 760-761.)

Further, the court in *Lopez* determined there is a rational basis to treat the two groups differently. (*Lopez*, *supra*, 38 Cal.App.5th at p. 1111-1112.)**7** "[T]he gap between a defendant's culpability in aiding and abetting the target offense and the culpability

---

**6** We analyze defendant's state and federal equal protection claims in the same manner. (See *People v. Chatman* (2018) 4 Cal.5th 277, 287.)

**7** Rational basis review applies to determine whether the Legislature may lawfully limit section 1170.95's retroactive relief to offenders convicted of murder because the law does not implicate a suspect class or a fundamental right. (See *Munoz*, *supra*, 39 Cal.App.5th at pp. 761-762; *Lopez*, *supra*, 38 Cal.App.5th at pp. 1110-1111.)

13

ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense is attempted murder or, in the prosecutor's discretion, aggravated assault. The Legislature could have reasonably concluded reform in murder cases 'was more crucial or imperative.' " (*Id.* at p. 1112.) Additionally, "the process created in section 1170.95 for those convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate that conviction and to be resentenced is not cost free. The staff of the Senate Appropriations Committee estimated, if 10 percent of the inmates eligible for relief under [SB] 1437 petitioned the courts for resentencing, additional court workload costs would approximate $7.6 million. The committee's report expressed concern that this increase in workload 'could result in delayed court services and would put pressure on the General Fund to fund additional staff and resources.' . . . [¶] In a world of limited resources, it is reasonable for the Legislature to limit the scope of reform measures to maintain the state's financial integrity." (*Ibid*., fn. omitted.)

Accordingly, we reject defendant's claim that section 1170.95 violates the equal protection clauses of the state and federal constitutions because it provides retroactive relief to offenders convicted of murder but not attempted murder.

## IV.   DISPOSITION

The order is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. Franco*
**H047797**