Filed 4/20/21  P. v. Olayo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ARMARO OLAYO,<br><br>    Petitioner and Appellant. | H047230<br>(Santa Clara County<br>Super. Ct. No. BB304492) |

## I.    INTRODUCTION

In 2005, a jury convicted petitioner David Armaro Olayo of first degree felony murder (Pen. Code, § 187, subd. (a)),[1] robbery (§§ 211, 212.5), and burglary (§§ 459, 460, subd. (a)) and found true various sentence enhancements.  The superior court sentenced petitioner to 25 years to life.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (S.B. 1437).  (Stats. 2018, ch. 1015, § 4.)  Section 1170.95 allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction under recent changes to the law.  After briefing and argument by the parties, the superior court denied the

---

[1] All further statutory references are to the Penal Code.

petition, determining that S.B. 1437 was unconstitutional and that petitioner had failed to state a prima facie case for relief.

Petitioner contends that the superior court erred when it denied the petition. Petitioner argues that S.B. 1437 is constitutional and that the superior court should have issued an order to show cause because he established a prima facie case of entitlement to relief. The Attorney General agrees. The Santa Clara County District Attorney filed an amicus brief, arguing that the superior court properly denied the petition because petitioner failed to state a prima facie case for relief as there is substantial evidence in the record of conviction that petitioner could be convicted of murder under current law.[2] The district attorney does not contest petitioner's claim that S.B. 1437 is constitutional.

The Courts of Appeal, including this one, have held that S.B. 1437 is constitutional and we concur with those decisions. (See, e.g., *People v. Lamoureux* (2019) 42 Cal.App.5th 241; *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Johns* (2020) 50 Cal.App.5th 46; *People v. Alaybue* (2020) 51 Cal.App.5th 207.) The courts are divided, however, on how a superior court should assess whether a petitioner has made a prima facie showing of entitlement to relief such that an order to show cause should issue (see, e.g., *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 (*Drayton*); *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 (*Duchine*); contra, *People v. Garcia* (2020) 57 Cal.App.5th 100 (*Garcia*), review granted Feb. 10, 2021, S265692), and there are currently two cases pending before the California Supreme Court involving section 1170.95's requirement that the petitioner establish a prima facie case (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*); (*People v. Strong* (Dec. 18, 2020,

---

[2] The district attorney requested that we take judicial notice of the record in case No. H029202, where this court affirmed the judgment on direct appeal. We granted the district attorney's request by separate order.

C091162) [2020 Cal.App.Unpub.LEXIS 8505], review granted Mar. 10, 2021, S266606 (*Strong*)).

For reasons that we will explain, we continue to follow our decision in *Drayton* and conclude that petitioner stated a prima facie case of entitlement to relief under section 1170.95. We will therefore reverse the superior court's order and remand the matter for the issuance of an order to show cause and an evidentiary hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*[3]

Eighty-three-year-old Desire Telmont lived with 77-year-old Doris Condon for 32 years in her house on Jardin Drive in Mountain View. On October 25, 2003, he left the house between 9:00 and 10:00 a.m. to run some errands and Condon stayed home. Telmont expected the gardeners to arrive around 2:00 p.m., but when he arrived home around 1:35 p.m. they were already there working in the front yard. He entered the house through the side door and did not see Condon where he expected to find her. He saw some of his things out of place in his bedroom and his closet and drawers open. He then found Condon lying in a pool of blood in the living room with one of his gray sweatshirts wrapped around her neck. He called 911.

At 1:43 p.m. on October 25, 2003, Mountain View firefighter paramedics responded to a call from the Jardin Drive residence regarding a possible fall victim. When they arrived they found Condon lying face down on the carpet in the living room. Although there was a lot of blood on the carpet, Condon was conscious and was able to respond when the paramedics talked to her. They moved a couple of items in the room in order to attend to her, including a sweatshirt that was near her head. They turned her over onto her back and found that she was bleeding from the nose and ears, that she had a large hematoma on her

---

[3] Other than substituting "petitioner" for "defendant," the facts are taken verbatim from this court's opinion in case No. H029202. The opinion was an exhibit to the district attorney's opposition to petitioner's section 1170.95 petition in the superior court.

forehead, and that her eyes were swollen shut. Telmont told the paramedics that articles in the house had been moved and were not in their usual location. The paramedics contacted the police. Condon was taken by ambulance to the hospital within 10 minutes.

Mountain View police officers responded to the residence. They found a blood-spattered gray sweatshirt in the living room. A desk in Condon's bedroom had been ransacked, a chair had been overturned, a safe was toppled over, and there were a section of orange and a shoulder bag on the floor. The wallet attached to the shoulder bag was missing, and Telmont testified that Condon usually kept $300 to $500 in that wallet. The safe was locked, which was unusual, and still contained the personal papers, stocks, cash, and gold and silver coins that were kept there. A jewelry box on top of Condon's dresser appeared undisturbed, a cup containing dollar bills was left on top of the desk, and an envelope containing $3,600 was still in the desk. Officers also found orange peels near the street outside the residence.

Condon was in critical condition when she arrived at the hospital. She had a skull fracture, bilateral frontal contusions, subdural hemorrhaging, a neck fracture, two rib fractures, and multiple facial fractures. She was originally lucid and communicative but was nonresponsive the following day. She eventually fell into a vegetative state. On November 28, 2003, Carol Brainerd, Condon's daughter, decided to withdraw life support because the attending doctors agreed that Condon would not have any quality of life and Condon had left written instructions stating that she did not wish to have life support extend her life. The pathologist who performed the autopsy determined that the cause of Condon's death was complications of blunt force injuries of the head and neck.

Andres Arellano had been doing gardening work every Saturday for Condon and Telmont for several years before October 25, 2003. He would usually arrive at 2:00 p.m., but on Saturday, October 25, 2003, he arrived around 1:00 p.m. with his helper. As he arrived he saw a man he did not recognize standing in the doorway of the home next to the garage and looking from side to side. He also saw a second man walking down the sidewalk

4

eating something. Both men then went inside the home. Arellano worked on the front and back yards and did not hear anything unusual. While he was using the blower in the front yard the second man passed him after leaving the house by the same door he had entered. The man walked over to a third man who was waiting by a car, and then both of them got in the car. They made a U-turn and drove past Arellano as they left. Arellano never saw the first man leave the house or get into the car, nor did he see Telmont arrive home. He saw Telmont's truck parked on the street shortly before the paramedics arrived. At trial Arellano identified petitioner as the second man, a picture of Enrique Chavez as the first man, and a picture of Jose Sosa as the third man.

Lilia Olayo, petitioner's sister, had been Condon and Telmont's house cleaner for a few years, and came every other Thursday. She always brought a helper with her and petitioner helped her for about a year. Condon was always at home when Olayo arrived and Telmont testified that he saw petitioner at the house six to eight times prior to October 25, 2003.

Following Condon's death, officers received information from citizen informants that led to the investigation and arrest of petitioner, Enrique Chavez and Jose Sosa. Chavez was arrested on December 3, 2003, Sosa was arrested on December 6, 2003, and petitioner was arrested on December 7, 2003. Officers videotaped their December 7, 2003 interview of petitioner, and DVDs of the videotape were admitted into evidence.

After petitioner was read his Miranda rights and said that he understood them, he told the officers that he had cleaned Condon and Telmont's house with his sister. Then, one day when he and his friend, Chavez, were drinking beer, Chavez told petitioner that if he showed Chavez a place where they could steal, Chavez would give him some money. Because he was drunk, petitioner took Chavez to Condon's house. Chavez's friend, Sosa, drove them, but Chavez told Sosa only that Chavez was going to get some money that was owed him. Chavez told petitioner to wait outside. Chavez got out of the car and went inside and petitioner stayed outside. After petitioner heard Condon screaming, he looked inside.

5

He saw Condon down on the floor, bleeding from the mouth and trying to get up, and Chavez in another room. Petitioner called out for Chavez but he did not answer. Petitioner was frightened so he left; he did not try to help Condon. When the gardeners came he went inside. Chavez was pulling on a heavy safe. Petitioner grabbed a wallet from inside a purse in the bedroom and went back to the car. Sosa asked him what they were doing. When petitioner said that Chavez came to burglarize the house, Sosa said that if he had been aware beforehand he would have participated more. Chavez stayed in the house for a while then came out, running. Chavez told petitioner that Condon had confronted him, that he had beaten and kicked her, and that he had left his shirt behind. Chavez had taken some one dollar bills and there were about two hundred dollars in the wallet petitioner had taken. They divided up the money and petitioner got about $70.

Petitioner said that he was telling the officers the truth because they knew that Chavez was the one who hurt Condon, and that they only wanted to know who took him to the house. He said that he wanted to tell Condon's daughters that he was at the house and that he went inside and participated in the stealing, but that he did not know what was going to happen to Condon. He said that he would like to ask for their forgiveness for having taken Chavez there. He wrote a one-page letter expressing remorse and requesting forgiveness.

Shortly after his interview, officers placed petitioner in the same interview room with Chavez, and the two of them were alone for about 30 minutes. During their conversation, which was videotaped, petitioner said that during his police interview "that job came up" and that the "old lady died I think." Petitioner also said that the police had shown him photos of Chavez and Sosa, and that they knew about the wallet.

On November 30, 2003, Brainerd found a black T-shirt in Condon's bedroom that did not belong to Condon. She turned the T-shirt over to the police. A criminalist at the county crime lab determined that Condon was the source of the blood stains found on the T-shirt. The criminalist also determined that DNA from both Chavez and Condon were on

6

the T-shirt.  The orange section found in Condon's bedroom and the orange peels found outside her home were also tested for DNA.  A criminalist eliminated Enrique Chavez as a source of the DNA found on the orange peels and the orange section, but determined that petitioner was the source of the DNA found on one of the orange peels, and was included as a possible contributor of the DNA found on four other orange peels.

Petitioner rested without calling any witnesses.

**B.      *Procedural History***

Petitioner was charged by amended information with first degree murder (§ 187; count 1), robbery (§§ 211, 212.5; count 2), and first degree burglary (§§ 459, 460, subd. (a); count 3).  It was also alleged that petitioner committed robbery in an inhabited dwelling while acting in concert with two or more persons (§ 213, subd. (a)(1)(A)), a victim was present in the residence during the commission of burglary (§ 667.5, subd. (c)(21)), and petitioner knew or reasonably should have known that the victim was 65 years old or older (§ 667.9, subd. (a).)

In 2005, a jury found petitioner guilty as charged.  The superior court sentenced petitioner to 25 years to life on count 1 and stayed midterm sentences on counts 2 and 3 pursuant to section 654.  Petitioner appealed, and this court affirmed the judgment.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95.  The petition consisted of a three-page preprinted form, two pages of which were a declaration petitioner signed under penalty of perjury.  Among other boxes, petitioner checked boxes on the form declaring that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; "[a]t trial, [he] was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; and he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019."  In addition, petitioner checked boxes declaring that he "was not the actual killer"; he "did not, with the intent to

7

kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life during the course of the crime or felony."

The superior court appointed counsel to represent petitioner. The district attorney filed two oppositions to the petition, consisting of a constitutional challenge to section 1170.95 and an opposition to the petition's merits. The district attorney argued that S.B. 1437 was unconstitutional because it improperly amended Propositions 7 and 115 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978); Prop. 115, as approved by voters, Primary Elec. (June 5, 1990)) and violated the separation of powers doctrine. Regarding the petition's merits, the district attorney conceded that petitioner was convicted of felony murder and was not the actual killer, but argued that petitioner had not met his burden of stating a prima facie case that he could not be convicted of first or second degree murder under current law and that "the record of conviction shows that [p]etitioner was a major participant in the underlying felony . . . and acted with reckless indifference to human life."

Petitioner replied to the district attorney's oppositions. Petitioner contended that S.B. 1437 did not unconstitutionally amend Propositions 7 and 115 or violate the separation of powers doctrine. Petitioner further contended that the court's prima facie review "is not meant to determine the ultimate issue" and that "if there is a factual dispute about whether relief should be granted, [the court] should issue an order to show cause and hold a hearing." Petitioner argued that he had stated a prima facie case for relief because "[t]he record clearly demonstrates that the government never proved that [he] was the actual killer, used a felony-murder theory to convict, and did not prove [he] was a major participant who acted with reckless indifference to human life." Petitioner asked the court to issue an order to show cause and hold an "evidentiary hearing with the opportunity to present evidence."

The superior court ruled that S.B. 1437 was unconstitutional because it unlawfully amended Propositions 7 and 115 and violated the separation of powers doctrine by "reopening cases that are final, [which] invad[es] the province of the courts." The court also determined that petitioner had not established by a preponderance of the evidence that he could not be convicted of murder under current law and had therefore failed to establish a prima facie case for relief. Relying on the factual summary of the offense in this court's opinion affirming the judgment, the court found that petitioner was a major participant in the underlying felony who acted with reckless indifference to human life. The court stated, "This robbery would not have happened but for [petitioner] and . . . [petitioner] then had an opportunity to prevent further damage [to the victim] or to respond in some way. And, in fact, he contributed to the burglary and left and never offered any help until he couldn't escape and was being interrogated by police officers." The court added that there was "a fair inference that [petitioner] sees the [victim] is in dire straits, and he takes no action whatsoever at an time during, after, or well after the burglary to protect her from . . . death."

### III. DISCUSSION

#### A. *S.B. 1437's Statutory Framework*

The Legislature enacted S.B. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) And section 189, subdivision (e), now limits liability for murder to a

9

person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

In addition to the amendments to sections 188 and 189, S.B. 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Subdivision (c) of section 1170.95 "prescribes a two-step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*), review granted Mar. 18, 2020, S260493; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118-123, review granted

10

Nov. 10. 2020, S264684 [disagreeing with *Verdugo* and holding that section 1170.95, subdivision (c) requires only one prima facie review].)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the People have the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid.*)" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) However, the parties "may rely on the record of conviction . . . to meet their respective burdens." (§ 1170.95, subd. (d)(3).) The burden of proof at the hearing is on the prosecution and the prosecution must prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

### B.   *Standard of Review*

Questions of statutory interpretation and a statute's constitutionality are reviewed de novo. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.) Whether the superior court properly denied petitioner's section 1170.95 petition for failure to state a prima facie case for relief involves multiple standards of review. We review the court's factual findings for substantial evidence and the court's application of those facts to section 1170.95 de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 981.)

### C.   *S.B. 1437 Is Constitutional*

The first basis for the superior court's denial of petitioner's section 1170.95 petition was its determination that S.B. 1437 unconstitutionally amended Propositions 7 and 115 and violated the separation of powers doctrine.

As we stated above, several courts including this one have considered these issues and have unanimously held that S.B. 1437 is constitutional. (See, e.g., *People v. Lamoureux*, *supra*, 42 Cal.App.5th 241; *People v. Superior Court* (*Gooden*), *supra*, 42 Cal.App.5th 270; *People v. Cruz*, *supra*, 46 Cal.App.5th 740; *People v. Bucio*, *supra*, 48 Cal.App.5th 300; *People v. Johns*, *supra*, 50 Cal.App.5th 46; *People v. Alaybue*, *supra*, 51 Cal.App.5th 207.) We concur with the decisions reached in those cases and conclude that the Legislature did not amend Propositions 7 or 115 or violate the separation of powers doctrine through its enactment of S.B. 1437. Because the parties agree that S.B. 1437 is constitutional, and the district attorney does not argue otherwise in his amicus brief, we do not address the constitutionality of S.B. 1437 further here.

### D.     *Petitioner Established a Prima Facie Case of Entitlement to Relief*

Petitioner contends that the superior court erred when it denied his section 1170.95 petition at the prima facie stage because the court evaluated and weighed the evidence in the record of conviction to determine that petitioner was a major participant who acted with reckless indifference to human life and was therefore ineligible for resentencing because he could be convicted of murder under current law. The Attorney General agrees that the court erred because "[a]n examination of the record and briefing by counsel did not indisputably show as a matter of law that [petitioner] was ineligible" and that "[t]o the extent . . . the superior court found there was evidence that [petitioner] was a major participant who acted with reckless indifference to human life, it necessarily engaged in [impermissible] factfinding." In an amicus brief, the district attorney asserts that more than "a mere declaration of eligibility" is required for petitioner to establish a prima facie showing of entitlement to relief. The district attorney contends that the superior court's denial of the petition was proper because there is substantial evidence in the record of conviction that petitioner could be convicted of murder under current law.[4]

_____

[4] There are several cases involving the statutory interpretation of section 1170.95 pending before the California Supreme Court. In *Lewis*, the court will decide whether a

### 1. The Second Prima Facie Inquiry Under Section 1170.95

As stated, a superior court performs two prima facie reviews under subdivision (c) of section 1170.95. In its first review, conducted before briefing by the parties, the court determines "whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) In its second review, which occurs after briefing, the court determines whether the petitioner has made a prima facie showing of entitlement to relief. (*Ibid.*) At issue here is the second prima facie review.

In *Drayton*, we considered how a superior court should "assess whether a petitioner has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), such that it must issue an order to show cause." (*Drayton*, *supra*, 47 Cal.App.5th at p. 968.) We held that the superior court "should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*Id.* at p. 968; see also *Verdugo*, *supra*, 44 Cal.App.5th at p. 329 ["The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner."].) We determined that while the superior court "should not evaluate the credibility of the petition's assertions, . . . it need not credit factual

---

superior court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95, subdivision (c), and when the right to appointed counsel arises under section 1170.95, subdivision (c). (*Lewis*, *supra*, 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.) In *Strong*, the court will determine whether a felony-murder special circumstance finding rendered before the court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 precludes a petitioner from making a prima facie showing under section 1170.95. (*Strong*, *supra*, 2020 Cal.App.Unpub.LEXIS 8505, review granted Mar. 10, 2021, S266606.) Finally, in *People v. Duke*, the court will decide whether, after an order to show cause has issued, the prosecution must establish a petitioner's ineligibility for relief by proving each element of murder liability under current law beyond a reasonable doubt or if it can meet its burden by presenting substantial evidence of the petitioner's murder liability under the revised murder statutes. (*People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13. 2021, S265309.)

assertions that are untrue as a matter of law." (*Drayton*, *supra*, at p. 980.) The superior court's authority to make credibility determinations at the prima facie stage "is limited to readily ascertainable facts from the record . . . , rather than factfinding involving the weighing of evidence or the exercise of discretion." (*Ibid.*; accord, *Duchine*, *supra*, 60 Cal.App.5th at p. 815.) "If, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause." (*Drayton*, *supra*, at p. 968.)

In reaching our decision, we found that "at least with respect to the prima facie showing under section 1170.95[,] [subdivision] (c), habeas corpus procedures provide a suitable analogy," and observed that courts evaluating habeas petitions " 'ask[] whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. [Citations.]' " (*Drayton*, *supra*, 60 Cal.App.5th at pp. 977-978.) The district attorney agrees that the process for evaluating whether a section 1170.95 petition has established a prima facie showing of entitlement to relief is akin to habeas procedures. He argues, however, that mere compliance with the requirements of subdivision (b)(1) of section 1170.95—including that the petitioner file a declaration averring eligibility for relief under the statute—is insufficient.[5] Rather, according to the district attorney, a "petition must additionally allege sufficient facts to establish entitlement to relief" and, thus, "[i]t was [petitioner's] burden to plead facts that he could not be convicted under [current murder law]." In the district attorney's view, petitioner "ha[d] a burden to plead more." The district attorney asserts that petitioner "has failed to establish a prima facie case that he 'could not [presently] be convicted of first or second degree murder . . . ' . . . as there is

---

[5] Section 1170.95, subdivision (b)(1) states that "[t]he petition shall include all of the following: [¶] (A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel."

substantial evidence [in the record of conviction] that he was a major participant and that he acted with reckless indifference to human life."

We observe, however, that petitioner *did* plead facts, by way of a declaration signed under penalty of perjury, that, if true, *would* entitle him to relief. Petitioner declared, "I was not the actual killer"; "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; "I was not a major participant in the felony or I did not act with reckless indifference to human life during the course of the crime or felony"; and "[t]he victim was not a peace officer in the performance of his or her duties." Under current law, assuming those facts are true, petitioner could not now be convicted of murder. (See §§ 188, 189.) In the habeas context at least, in the absence of evidence necessarily demonstrating otherwise, petitioner's declaration would suffice to trigger the issuance of an order to show cause. In habeas proceedings, "[i]ssuance of an [order to show cause] . . . indicates the issuing court's *preliminary assessment* that the petitioner would be entitled to relief if his [or her] factual allegations are proved" (*People v. Duvall* (1995) 9 Cal.4th 464, 475) and an evidentiary hearing is conducted to resolve disputed material facts (*id.* at p. 478).

The district attorney relies on *Garcia*, *supra*, 57 Cal.App.5th 100 to support his position that the superior court's denial of the petition was proper. In *Garcia*, our colleagues in Division Six of the Second District disagreed with our holding in *Drayton*. (*Garcia*, *supra*, 57 Cal.App.5th at p. 116.) The court observed that " '[a] prima facie showing is one that is sufficient to support the position of the party in question,' " noting that a prima facie showing may generally be contradicted and that section 1170.95, subdivision (c) specifically allows for contradiction of the petition's allegations through its requirement that the prosecution respond to the petition before the issuance of an order to show cause. (*Id.* at p. 110.) Thus, the court reasoned, "in determining whether the petitioner has made a prima facie showing of entitlement to relief under section 1170.95, the [superior] court is not required to accept the allegations in the petition as true." (*Ibid.*)

15

The *Garcia* court then interpreted section 1170.95's language requiring a petitioner to make a prima facie showing that he or she " 'could not be convicted' " of murder under current law. (*Garcia*, *supra*, 57 Cal.App.5th at p. 114, italics omitted.) The court found that " 'could' " is " 'used . . . as an alternative to *can* suggesting less force or certainty.' [Citation.]" (*Ibid.*) The court held that "where . . . the record of conviction contains substantial evidence based on which a reasonable trier of fact could find the petitioner guilty of murder beyond a reasonable doubt under current law . . . , the petitioner has failed to carry his [or her] burden of making a prima facie showing that he [or she] could not presently be convicted of murder" and "[t]he petition must be denied even though the assertions in the petition, if true, would satisfy the statutory criteria for relief." (*Garcia*, *supra*, 57 Cal.App.5th at p. 106.) The court concluded that in the case before it, "[i]f the jury had been instructed on direct aiding and abetting and had based its murder conviction on this theory, the conviction would have been upheld on appeal because it would have been supported by substantial evidence." (*Id.* at p. 115.) Thus, because "substantial evidence supports a murder conviction based on a direct aiding and abetting theory, [the petitioner's] conclusory allegations in his petition do not constitute a prima facie showing that he could not be convicted of murder based on this theory." (*Ibid.*)

Important to *Garcia*'s reasoning was its determination that "[n]o weighing of the evidence is involved in applying the substantial evidence test." (*Garcia*, *supra*, 57 Cal.App.5th at p. 115.) While we agree that the substantial evidence test *employed on appeal* involves a legal determination (see *Jackson v. Virginia* (1979) 443 U.S. 307, 319, superseded in part on other grounds by 28 U.S.C. § 2254(d)), when a superior court denies a section 1170.95 petition on the basis that the petitioner could be convicted under current law, unless the record of conviction establishes the petitioner's ineligibility as a matter of law, the superior court is determining that there is a new, viable theory of guilt. For example, here, the superior court found that petitioner was a major participant who acted with reckless indifference to human life, findings that are not established by the record of

16

conviction as a matter of law. In deciding that this new theory is satisfied, unless the record of conviction establishes the petitioner's ineligibility as a matter of law—through a jury's findings or a petitioner's plea admissions, for example—a court necessarily evaluates and weighs the facts. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 982.)

Determining a new theory of guilt is quite different from the traditional application of the substantial evidence standard of review on appeal, where the reviewing court "review[s] the whole record *in the light most favorable to the judgment* to determine whether it discloses substantial evidence . . . from which a reasonable trier of fact could find the petitioner guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792, italics added.) "[T]he '[substantial evidence] standard [on appeal] gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a petitioner has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' [Citation.]" (*People v. Lopez* (2020) 56 Cal.App.5th 936, 948 (*Lopez*).)[6] In the section 1170.95 context, in contrast, unless the record of conviction establishes the petitioner's ineligibility as a matter of law, there has been no judgment that establishes the petitioner's guilt under current law.

---

[6] In *Lopez*, a different panel of this court held that at the evidentiary hearing after the issuance of an order to show cause, the burden is on the prosecution "to prove beyond a reasonable doubt each element of first or second degree murder under current law" in order to establish the petitioner is ineligible for section 1170.95 relief. (*Lopez*, *supra*, 56 Cal.App.5th at p. 949; accord, *People v. Rodriguez* (2020) 58 Cal.App.5th 242, 243-244; but see *Duke*, *supra*, 55 Cal.App.5th at p. 123 [holding that to carry its hearing burden, "the prosecution must . . . prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder," which is "essentially identical to the standard of substantial evidence"].)

Further, *Garcia*'s test diminishes the opportunity provided to both parties by the Legislature to "offer new or additional evidence" at a hearing after the issuance of an order to show cause. (§ 1170.95, subd. (d)(3).) "By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the petitioner was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner." (*Duchine*, *supra*, 60 Cal.App.5th at p. 813.) Indeed, we respectfully conclude that by allowing a superior court to deny resentencing at the prima facie stage based on a finding that there is substantial evidence in the record from which a trier of fact could find the petitioner guilty, the substantial-evidence test is at odds with the Legislature's goal of "*ensur*[*ing*] that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added.) And we observe that in addition to the presentation of new evidence at the hearing, the Legislature has given the parties the option to "rely on the record of conviction . . . to meet their respective burdens" (§ 1170.95, subdivision (d)(3)), which we believe tends to support the view that the Legislature intended for an order to show cause to issue when the record of conviction does not demonstrate a petitioner's ineligibility as a matter of law.

We acknowledge the district attorney's concern over a holding that "a bare-bones declaration of eligibility" can suffice to trigger the issuance of an order to show cause when the record of conviction does not establish a petitioner's ineligibility as a matter of law. As stated, the appellate courts are divided on the appropriate prima facie review of a section 1170.95 petition, demonstrating the complexity of this issue which, in many cases, involves a murder conviction long ago final. We look forward to guidance from the California Supreme Court on this issue in *Lewis* and *Strong*.

For the reasons stated, however, we continue to hold that at the prima facie stage, the superior court "should accept the assertions in the petition as true unless facts in the record

18

conclusively refute them as a matter of law," and that "[i]f, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause." (*Drayton*, *supra*, 47 Cal.App.5th at p. 968; see also *Duchine*, *supra*, 60 Cal.App.5th at p. 815; *Verdugo*, *supra*, 44 Cal.App.5th at p. 328.)

### 2.  The Superior Court Erred Because It Weighed Facts in the Record

As we stated above, petitioner declared under penalty of perjury that he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019," and that he "was not a major participant in the felony or . . . did not act with reckless indifference to human life during the course of the crime or felony."

Despite petitioner's allegations that he was not a major participant in the felony underlying the murder, the superior court determined that petitioner was a major participant based on the facts stated in this court's opinion affirming judgment. As those facts included that petitioner suggested the particular home to target, took something from the home during the offense, and did not help the victim once he became aware that she was injured, the court found that petitioner was a major participant because "[t]his robbery would not have happened but for him," petitioner had an opportunity help the victim but did not do so, and petitioner contributed to the underlying offense. Similarly, despite petitioner's allegations that he did not act with reckless indifference to human life, the court found that petitioner acted with reckless indifference based on the facts in this court's opinion that petitioner heard the victim scream and subsequently saw her injured condition. The court stated, "[F]rom the basis of the appellate opinion alone, it's a fair inference that [petitioner] sees the [victim] is in dire straits, and he takes no action whatsoever at an time during, after, or well after the [offense] to protect her from . . . death."

As in *Drayton*, in making these findings the superior court weighed the evidence and made credibility determinations to resolve the disputed issues of whether petitioner was a

19

major participant in the underlying felony and whether he acted with reckless indifference to human life. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 982.) While it may be possible to infer petitioner's role in the offense and his mens rea by evaluating and weighing the facts as stated in the record of conviction, at the prima facie stage the superior court was obligated to accept the petition's allegations as true unless they were refuted by the record of conviction as a matter of law. (*Id.* at p. 980.) Because the allegations were not refuted by the record of conviction as a matter of law, the superior court erred when it determined that petitioner was a major participant who acted with reckless indifference to human life. (See *id.* at p. 982.)

Accordingly, we will reverse the superior court's order determining that petitioner failed to establish a prima facie case of entitlement to relief under section 1170.95. We will remand the matter for the issuance of an order to show cause and a hearing on petitioner's section 1170.95 petition. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 982-983; § 1170.95, subds. (c), (d).) We express no opinion regarding petitioner's entitlement to relief following the hearing.

## IV.   DISPOSITION

The superior court's order denying petitioner's Penal Code section 1170.95 petition is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing on the petition (Pen. Code, § 1170.95, subd. (d)).

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. Olayo*
**H047230**